IN RE: C.M.R. L.C.R. B.G.R., Minor Children.
No. COA09-117
Court of Appeals of North Carolina.
Filed: July 7, 2009.
This case not for publication
Broome, Hucks and Regan, LLP, by David M. Broome, Erin S. Hucks, and Tracy Regan, for petitioner-mother appellee.
Mercedes O. Chut for respondent-father appellant.
HUNTER, JR., Robert N., Judge.
Respondent-father, Jimmy Michael R. ("respondent") appeals from an order terminating his parental rights to his children, C.M.R., L.C.R. and B.G.R. Because it is not clear that respondent received procedural due process, we vacate the order and remand for further findings of fact.

I. FACTS
Petitioner and respondent were married in December of 1994 and separated in March of 2001. Three children were born of the marriage: C.M.R., L.C.R., and B.G.R. A month after the parties' separation, a Voluntary Support Agreement and Order was entered in Guilford County. Respondent voluntarily agreed to pay child support in the amount of $409.00 per month starting in May of 2001. Guilford County Child Support Enforcement moved for an order to show cause for nonpayment of child support in June and July of 2001. The trial court dismissed the order after respondent paid $250.00.
In April of 2002, Guilford County Child Support Enforcement obtained another show cause order against respondent for nonpayment. In September of 2002, an order of absolute divorce was entered and petitioner was granted custody of the children. The order was silent on the issue of visitation.
In October of 2002, respondent filed a motion to modify the child support order, because of "[loss] of employment and inability to secure employment that would sustain such a large monthly amount." On 19 March 2003, the trial court found respondent in civil contempt but allowed him to purge the contempt by paying $100.00. In August 2003, petitioner remarried and moved to Union County with her new husband and the three children. Petitioner did not inform respondent that she was moving, nor did she provide him with any way to contact his children. Respondent testified that he "never stopped trying" to find his children.
In September of 2003, the trial court ordered respondent to pay an additional $41.00 in arrears each month, but did not address his motion to modify child support. In January of 2004, respondent filed another motion to modify child support and in March of 2004, respondent's child support was temporarily reduced to $164.00 per month. In April of 2004, the trial denied respondent's motion to modify and reinstated the original child support order because respondent failed to appear at the hearing. Respondent filed another motion to modify his child support and the trial court subsequently reduced his child support $360.00 per month.
On 8 October 2004, respondent filed a motion in Guilford County requesting visitation with his children, alleging that petitioner had denied him access to the children. He later dismissed the motion "because God told him not to pursue it." In January of 2007, respondent sent a letter to petitioner, in which he spoke of being a prophet and having the ability to cast demons out of people.
Respondent testified that in May of 2007, "the day he found out where [his children] were", he went to file a motion for modification of the custody order to include visitation, but God told him not to pursue the motion. Later that week, he found petitioner's home; but upon his arrival, petitioner told him to leave or she would call the police.
On 19 November 2007, petitioner filed a petition for termination of parental rights ("TPR") alleging that respondent had neglected the children under N.C. Gen. Stat. § 7B-1111(a)(1) (2007); had willfully failed without justification to pay for the care of the juveniles, as required by the voluntary support agreement and order under N.C. Gen. Stat. § 7B-1111(a)(4); and had abandoned the children under N.C. Gen. Stat. § 7B-1111(a)(7). On 7 December 2007, respondent filed a response pro se denying the material allegations of the petition, in which he did not want his parental rights terminated.
On 10 April 2008, the trial court found respondent to be indigent and assigned him a court appointed attorney, Joseph L. Hutcherson II. The order appointing counsel stated that respondent was "in need of a psychological evaluation to determine competency and whether [a guardian ad litem] is needed[.]" On 21 April 2008, respondent's attorney, Mr. Hutcherson, moved to have a guardian ad litem appointed for respondent and the minor children, informing the court that "there are questions as to the mental competency of the Respondent[.]"
By order filed 13 May 2008, the trial court appointed Attorney Troy Smith as respondent's guardian ad litem, and Attorney Douglas Underwood as the children's guardian ad litem. The trial court concluded that "there is a reasonable basis to believe that [respondent] has diminished capacity and cannot adequately act in his own interest."
On 17 July 2008, the trial court ordered a psychological evaluation of respondent, finding that,"after speaking with the Respondent, Troy Smith agreed with Respondent's attorney that the Respondent may have a diminished capacity to assist his attorney in defending the action against him and may not be able to act adequately in his own behalf[.]" Respondent was ordered to undergo a psychological evaluation at Daymark Mental Health within 15 days "to determine his competency to assist [his] attorney at trial and. . . his general mental competency."
The trial court entered an Order to Show Cause against DayMark Mental Health on 3 September 2008 for its failure to conduct a psychological evaluation of respondent, as the court ordered in July of 2008. The record does not indicate whether respondent was ever psychologically evaluated, nor does the record indicate that a determination of whether respondent had the capacity to assist his attorney or whether he was generally competent to participate in the TPR proceedings was ever made.
On 16 October 2008, there was a hearing on the TPR petition. For reasons unclear to this Court, respondent's attorney, Mr. Hutcherson, was not present at the hearing, and Mr. Smith, respondent's appointed guardian ad litem, served as respondent's attorney. The record lists Leah Austin as respondent's guardian ad litem. The record does not show that Mr. Hutcherson withdrew as respondent's counsel, nor does it show that Mr. Smith was relieved of his appointment as respondent's guardian ad litem. Furthermore, we do not know if Ms. Austin was appointed as guardian ad litem or if she appeared in any role prior to the TPR hearing.
During the hearing, the trial court heard testimony from petitioner, petitioner's husband, respondent, and the children's guardian ad litem. Petitioner testified that respondent had not paid child support since February 2006, and that her current husband had a strong relationship with the children and desired to adopt them. Regarding his work history, respondent testified that he worked for Dillard's department store and voluntarily quit because "the Lord [told him] to teach acting"; he taught acting and voluntarily quit; he went back to Dillard's and then was fired; he worked for Crescent Ford and was fired for using a vehicle for his personal use; he worked at a convenience store and voluntarily quit because "[t]he Lord showed me it was time to go"; he worked at a car lot and voluntarily quit because "it was time to go"; he worked at Joseph A. Bank and voluntarily quit because "God moved me to Charlotte;" and he worked for three days at Blumenthal Arts Council in Charlotte and voluntarily quit to do street ministry. Respondent said that he was currently a street minister and lived with a friend without having to pay expenses.
By order filed 28 October 2008, the trial court concluded that grounds existed to terminate respondent's parental rights based upon determinations that respondent willfully failed without justification to pay for the care of his children, as required by the voluntary support agreement, and that it was in the best interests of the children to terminate respondent's parental rights. Respondent appeals.

II. ISSUES
Respondent argues that the trial court violated N.C. Gen. Stat. § 7B-1101.1, as well as his due process rights, by allowing his guardian ad litem to also serve as his counsel at the TPR hearing. Respondent assigns error to some findings of fact, and the conclusion that it was in the best interest of the children that his parental rights be terminated.

III. DISCUSSION
Our judicial system has a distinct obligation to ensure that parental rights are protected. In re T.W., 173 N.C. App. 153, 157, 617 S.E.2d 702, 706 (2005) (citation omitted). The fundamental liberty interest of natural parents in their children does not evaporate simply because they have not been model parents. In re K.N., 181 N.C. App. 736, 741, 640 S.E.2d 813 (2007). "If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections . . . . When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures." Id. (quoting Santosky v. Kramer, 455 U.S. 745, 753-54, 71 L. Ed. 2d 599, 606 (1982)). In addition to this constitutional duty, a trial judge must "inquire into the competency of a litigant in a civil trial or proceeding when circumstances are brought to the judge's attention, which raise a substantial question as to whether the litigant is non compos mentis." In re J.A.A. & S.A.A., 175 N.C. App. 66, 72, 623 S.E.2d 45, 49 (2005). Based on the record before us, it is obvious respondent's mental competency was in question, so that the presiding judge dutifully appointed one or more guardians ad litem to represent him. Moreover, respondent argues that his due process protections were not honored when his appointed guardian ad litem, Mr. Smith, began to serve as his attorney in violation of N.C. Gen. Stat. § 7B-1101.1(c). We agree.
The court appointed Mr. Smith as respondent's guardian ad litem, pursuant to N.C. Gen. Stat. § 7B-1101.1(c), as enacted in 2005, which states:
(c) On motion of any party or on the court's own motion, the court may appoint a guardian ad litem for a parent if the court determines that there is a reasonable basis to believe that the parent is incompetent or has diminished capacity and cannot adequately act in his or her own interest. The parent's counsel shall not be appointed to serve as the guardian ad litem.

N.C. Gen. Stat. § 7B-1101.1(c)(2007) (emphasis added).
Prior to 2005, a trial court was required to appoint a guardian ad litem for a parent in a TPR proceeding, when the petition alleged that, under N.C. Gen. Stat. § 7B-1111(6), the parent was incapable of providing proper care for the child because of the parent's "substance abuse, mental retardation, mental illness, organic brain syndrome, or another similar cause or condition." N.C. Gen. Stat. § 7B-1101(1) (2004). Following the enactment of N.C. Gen. Stat. § 7B-1101.1, which became effective for petitions filed on or after 1 October 2005, the portions of N.C. Gen. Stat. § 7B-1101 pertaining to appointments of guardians ad litem were deleted and the requirement that the parent must be alleged to be incapable under § 7B-1111(a)(6), as a precondition for the appointment of a guardian ad litem was eliminated as well. 2005 N.C. Sess. Laws ch. 398, § 19; N.C. Gen. Stat. § 7B-1101.1(c). N.C. Gen. Stat. § 7B-1101.1 now allows for the appointment of a guardian ad litem for a parent, "if the court determines that there is a reasonable basis to believe that the parent is incompetent or has diminished capacity and cannot adequately act in his or her own interest." Id. This is a case of first impression involving whether the statutory requirements of N.C. Gen. Stat. § 7B-1101.1 allow a guardian ad litem for an incompetent parent to also serve as counsel.
This Court has previously addressed the right to a guardian ad litem in TPR proceedings for a potentially incompetent parent under pre-October 2005 law. In these prior cases, our Court found per se reversible error when the facts justified appointment and the trial court failed to properly appoint a guardian ad litem. See, e.g., In re K.R.S., 170 N.C. App. 643, 613 S.E.2d 318 (2005) (reversing termination order on appeal for want of guardian ad litem in termination proceedings); see also In re Estes, 157 N.C. App. 513, 517, 579 S.E.2d 496, 499 (holding that the issue of whether the respondent should have been appointed a guardian ad litem was preserved for appellate review by statute even though it was not raised at trial), disc. review denied, 357 N.C. 459, 585 S.E.2d 390 (2003). Although decided under the prior statute, the reasoning in these cases continues to have merit.
Under the new statute, once the trial court decides that the parent should be appointed a guardian ad litem under N.C. Gen. Stat. § 7B-1101.1(c), "[t]he parent's counsel shall not be appointed to serve as the guardian ad litem." "The use of the word `shall' by our Legislature has been held by this Court to be a mandate, and the failure to comply with this mandate constitutes reversible error." In re Z.T.B., 170 N.C. App. 564, 569, 613 S.E.2d 298, 300 (2005) (citations omitted).
The duties of a guardian ad litem include assisting the parent and the parent's counsel "to ensure that the parent's procedural due process requirements are met." N.C. Gen. Stat. § 7B1-101.1(e)(4). Appointing a guardian ad litem, separate from the parent's attorney, is a fundamental procedural right that ensures the parent's right to a fair trial.
In the case sub judice, the trial court found that respondent met the standard for the additional protections of a guardian ad litem. These protections are in addition to the parent's right to counsel in a TPR. See N.C. Gen. Stat. § 7B-1101.1(a). Therefore, when the court appoints a guardian ad litem, pursuant to N.C. Gen. Stat. § 7B-1101(c), the statute provides that it "shall" not be the parent's attorney.
In the case before us, the record fails to clearly disclose whether respondent had a guardian ad litem in addition to his attorney. Our review of the record indicates that Mr. Hutcherson and Mr. Smith may both have served as respondent's counsel, and does not provide sufficiently that respondent had a separate guardian ad litem to meaningfully assist in the hearing. Mr. Hutcherson signed pleadings and motions filed from 21 April 2008 through 3 September 2008 as the attorney of record. The court appointed Mr. Smith as respondent's guardian ad litem on 13 May 2008. However, in Mr. Smith's fee application to the court, he billed for his services as respondent's appointed attorney from 13 May 2008 to 16 October 2008. Mr. Smith did not complete the section on that application, which requested payment for serving as a guardian ad litem. This conflict in the record evidence, which is not clarified in the termination order, suggests that the statutory prohibition might be violated.
The record lacks clarity about Mr. Smith's appearance as respondent's attorney at the TPR hearing and not as a guardian ad litem. The record fails to show that the court permitted Mr. Smith to withdraw as respondent's guardian ad litem or that Mr. Hutcherson withdrew as respondent's counsel. Furthermore, the record does not show why, when, or whether Ms. Austin was appointed as respondent's guardian ad litem nor does it indicate who served as respondent's guardian ad litem prior to the TPR hearing.
The lack of a guardian ad litem would unduly prejudice respondent, as there appears to have been a legitimate question as to whether respondent could adequately assist his counsel in the proceedings. The record does not show that respondent was psychologically evaluated nor was there a determination made regarding his mental competency. In the absence of a showing that respondent's mental health condition was not subject to question by the appointment of a proper guardian ad litem, the reliability of the determinations made by the trial court in the termination order is in doubt.
Because the record raises questions regarding the fundamental fairness of the procedure that led to the termination of respondent's parental rights, we must vacate the trial court's termination order and remand this matter to the trial court for further findings to clarify these record omissions. On remand, the trial court should address the following record deficiencies: 1) The results of any psychological evaluation of respondent and a determination of whether he is competent to assist his counsel in the TPR proceedings; 2) The level of respondent's mental illness, if any, and whether the illness was debilitating to the extent that respondent's ability to hold a job and pay child support was affected; 3) If respondent's mental illness prevented him from gainful employment, what effect, if any, does this have on the allegations of willful non-support and abandonment determinations; 4) Whether respondent had a guardian ad litem separate from his appointed attorney at all times; 5) Who served as respondent's attorney and guardian ad litem prior to the TPR proceeding, their dates of appointment, and if applicable, the date of withdrawal from respondent's case; and 6) If Ms. Austin was appointed as respondent's guardian ad litem, was there adequate time for her to assist respondent in preparing for the TPR hearing.
Respondent's mental competency was questioned several times through the termination of parental rights proceedings, yet we cannot determine if respondent was ever psychologically evaluated or determined to be mentally competent, as the court ordered, or whether any concern about respondent's mental competence was somewhat satisfied. It does not appear that he had a guardian ad litem separate from counsel, as required by N.C. Gen. Stat. § 7B1-101.1(c). Since we are remanding this matter for additional findings of fact, we also conclude that the trial court's termination order should be vacated and that the trial court should reconsider this matter on the merits, to the extent necessary, and enter a new order addressing the issue of whether respondent's parental rights should be terminated.

IV. CONCLUSION
Because we are unable to determine whether the respondent's due process rights were observed, we hereby vacate the trial court's termination order and remand this case to the trial court for the entry of a new order that addresses the issues set out above and the issues that should be addressed in determining whether respondent's parental rights should be terminated.
Vacated and remanded.
Judges ERVIN and BEASLEY concur.
Report per Rule 30(e).