ARROWOOD, Judge.
Respondent-mother appeals from orders terminating her parental rights to her minor children K.S.K. ("Kaila"), W.C.J.K. ("Wesley"), and N.G.K. ("Natasha").[1] Respondent-father appeals from orders terminating his parental rights to his minor children, Wesley and Natasha. For the reasons discussed herein, we affirm those portions of the orders terminating respondent-mother's parental rights, and vacate the portions of the orders terminating respondent-father's parental rights and remand for a new termination hearing.
I. Background
Kaila was born in October 2012 to respondent-mother and "Chad," who is not a party to this appeal. Wesley was born in March 2015 to respondent-mother and respondent-father. Following Wesley's birth, the Alexander County Department of Social Services ("DSS") received a report that Wesley's umbilical cord was tested and found positive for opiates, cannabinoids and Tramadol, and that there were concerns regarding domestic violence between respondents. Respondent-mother and the children were living with the maternal grandparents at the time. DSS entered into a safety plan with respondent-mother in which she agreed that she would be supervised by the maternal grandmother at all times when interacting with her children.
Natasha was born in October 2015 to respondent-mother and respondent-father. On 25 November 2015, DSS received a report that respondent-mother had tested positive for cocaine and marijuana at the time of Natasha's birth. Respondent-mother then tested positive for marijuana in December 2015 and tested positive for cocaine in February 2016.
On 3 March 2016, DSS filed juvenile petitions alleging that Kaila, Wesley, and Natasha were neglected juveniles. Following a 21 April 2016 adjudicatory and dispositional hearing, the trial court entered orders adjudicating the children to be neglected juveniles and granting custody of the children to DSS. The trial court ordered respondents to, among other things, enter into a case plan with DSS, complete a substance abuse and mental health assessment and comply with resulting recommendations, complete a domestic violence evaluation and comply with resulting recommendations, submit to random drug screens, and complete parenting classes and demonstrate skills learned during interactions with the juveniles. Respondent-mother was separately ordered to submit to inpatient substance abuse treatment, while respondent-father was separately ordered not to incur any additional criminal charges.
The trial court held a review hearing on 12 January 2017, after which the court entered a 2 February 2017 order relieving DSS of reunification efforts with respondents and establishing adoption as the sole plan of care. On 10 October 2017, DSS filed motions to terminate parental rights, alleging neglect and failure to make reasonable progress as grounds for termination. See N.C. Gen. Stat. § 7B-1111(a)(1)-(2) (2017). Following a 29 March 2018 hearing, the trial court entered orders on 10 May 2018 terminating respondents' parental rights after adjudicating the existence of both grounds alleged in DSS's motions. Respondent-mother filed written notice of appeal on 23 May 2018. Respondent-father filed written notice of appeal on 15 June 2018.
II. Discussion
A. Respondent-Mother's Appeal
As her sole issue on appeal, respondent-mother contends the trial court abused its discretion in denying her motion to continue made just prior to the termination hearing. We disagree.
" 'A motion to continue is addressed to the court's sound discretion and will not be disturbed on appeal in the absence of abuse of discretion. Continuances are not favored and the party seeking a continuance has the burden of showing sufficient grounds for it.' " In re D.W. , 202 N.C. App. 624, 627, 693 S.E.2d 357, 359 (2010) (quoting In re Humphrey , 156 N.C. App. 533, 538, 577 S.E.2d 421, 425 (2003) ). " 'Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.' " In re C.J.H. , 240 N.C. App. 489, 492-93, 772 S.E.2d 82, 86 (2015) (quoting State v. Hennis , 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988) ).
The Juvenile Code addresses continuances in abuse, neglect, and dependency proceedings:
The court may, for good cause, continue the hearing for as long as is reasonably required to receive additional evidence, reports or assessments that the court has requested, or other information needed in the best interests of the juvenile and to allow for a reasonable time for the parties to conduct expeditious discovery. Otherwise, continuances shall be granted only in extraordinary circumstances when necessary for the proper administration of justice or in the best interests of the juvenile.
N.C. Gen. Stat. § 7B-803 (2017).
The Juvenile Code also specifically addresses continuances for adjudicatory hearings in termination of parental rights proceedings. As relevant to this case, N.C. Gen. Stat. § 7B-1109(d) provides that "[c]ontinuances that extend beyond 90 days after the initial petition shall be granted only in extraordinary circumstances when necessary for the proper administration of justice, and the court shall issue a written order stating the grounds for granting the continuance." N.C. Gen. Stat. § 7B-1109(d) (2017). " 'If the trial court's findings of fact are supported by ample, competent evidence, they are binding on appeal, even though there may be evidence to the contrary.' " In re C.J.H. , 240 N.C. App. at 493, 772 S.E.2d at 86 (quoting In re S.C.R., 198 N.C. App. 525, 531, 679 S.E.2d 905, 909, appeal dismissed, 363 N.C. 654, 686 S.E.2d 676 (2009) ).
"[P]arental absence, without more, [does not] constitute[ ] extraordinary circumstances necessitating a continuance[.]" In re D.W., 202 N.C. App. at 627, 693 S.E.2d at 359. "When ... a parent is absent from a termination proceeding and the trial court preserves the adversarial nature of the proceeding by allowing the parent's counsel to cross examine witnesses ... the parent must demonstrate some actual prejudice in order to prevail upon appeal." In re Murphy, 105 N.C. App. 651, 658, 414 S.E.2d 396, 400 (citation omitted), aff'd per curiam, 332 N.C. 663, 422 S.E.2d 577 (1992).
In the present case, at the outset of the 29 March 2018 termination hearing, respondent-mother's counsel moved for a continuance, stating:
Your Honor, this would be a motion to continue. I received a text from my client yesterday at -- in the afternoon around 5 o'clock stating that she was unable to come to court today. She had a doctor's note. She had been admitted to the emergency room yes -- not yesterday, the day before yesterday, on the 28th. She said it was -- her throat is basically swollen shut almost. She cannot speak, and she has a fever. The note was dropped off. Can I approach with it?
Respondent-mother's counsel provided the trial court the doctor's note, which was signed on 28 March 2018 by a K. Brookshire, RN of Frye Regional Medical Center Emergency Department. The note states:
To Whom It May Concern, [respondent-mother] was released from our Emergency Department on 3-28-18. The doctor has determined that she/he may return to work/school on 3-30-18.
After hearing from counsel for DSS and respondent-mother, the trial court expressed concern that respondent-mother had not provided more detail that would help the court in determining whether to allow the motion to continue. The trial court later told respondent-mother's counsel:
I'm going to deny your motion to continue. However, if you would like to call your client and see if she can get here, or get me medical documentation that says she is restricted and is contagious and not able to speak and participate in the hearing, I will reconsider your request. And I'll give you some time to accomplish that. Okay?
The trial court then recessed the hearing at 10:47 a.m. The hearing resumed at 2:34 p.m. When the trial court asked respondent-mother's counsel if she "ha[d] any updates for the Court[,]" counsel responded:
I have been in contact with her multiple times. She is still stating that she is sick. She is not -- she does not have a ride to Court. She does not have a ride anywhere that she can try to get more medical documentation. If she did -- she does not have insurance nor money to pay for anyone new to take her temperature, to give the Court a diagnosis.
As far as verbally why she is not here, she has told me multiple times that she has tried to contact Frye, which is where the original note was from to get her discharge papers faxed over to the courthouse. I did provide her with the fax number to the courthouse. Told her tha[t] anything that gave any kind of information, would be very helpful to the Court and I relayed any message that you stated directly to her and told her it was very important for her to be here. She has continued to state that she knows it's very important to be here.
Respondent-mother's counsel renewed her motion to continue, which the trial court denied.
In its orders terminating respondent-mother's parental rights, the trial court found:
The Respondent Mother was not present at the present hearing. Her attorney was in continuous communication with the Respondent Mother who repeatedly sent texts to [her attorney] throughout the day. Although the Respondent Mother alleged that she was ill and requested that the matter be continued, the court gave the Respondent Mother abundant opportunity to confirm the illness through a doctor's note, even if through a third party, which [respondent-mother] declined to do. Receiving no competent evidence which would allow the court to find that the Respondent Mother was actually ill and unable to attend the present hearing, the court denied the Respondent Mother's motion to continue. The Court will find that the Respondent Mother was attempting to delay this termination proceeding without just cause.
Respondent-mother challenges this finding of the trial court. Respondent-mother contends that she did confirm her illness through a doctor's note, and that she was not given "abundant opportunity" to further document her illness. She further contends that her doctor's note was competent evidence that would have allowed the trial court to find that respondent-mother was too ill to attend the hearing, and that there was no basis for the trial court's determination that respondent-mother was attempting to delay the hearing without just cause.
However, the challenged portions of this finding of fact, finding of fact 3, are supported by ample, competent evidence of record, and respondent-mother's contentions do not demonstrate that the trial court abused its discretion in denying her motion to continue. The motions to terminate in this matter were filed on 10 October 2017, and the matters came on for hearing on 29 March 2018. Thus, more than 90 days had passed from the filing of the motions to terminate, and respondent-mother was required to demonstrate "extraordinary circumstances" warranting the continuance. See N.C. Gen. Stat. § 7B-1109(d) ; In re C.J.H. , 240 N.C. App. at 495, 772 S.E.2d at 87. Our review of the record reveals that the trial court did not abuse its discretion in determining that respondent-mother did not meet her burden.
While counsel did provide a doctor's note, the note was a form document containing two sentences that simply stated that respondent had been released from the emergency department on 28 March 2018 and that she could return to "work/school" on 30 March 2018. The note made no mention of what, if anything, respondent-mother had been diagnosed with, nor did it state that respondent-mother was ill. The note did not state whether respondent-mother was contagious or whether or not she could participate in the hearing. After respondent-mother's counsel moved to continue the hearing, the trial court recessed for nearly four hours to give counsel an opportunity to contact respondent-mother to see if she could come to the hearing or provide medical documentation that she was contagious or unable to participate in the hearing due to illness. Despite having "been in contact with [respondent-mother] multiple times" over the recess, respondent-mother's counsel was unable to provide any additional documentation to support respondent-mother's claim that she was too sick to attend, and respondent-mother did not appear for the hearing.
Additionally, although counsel for respondent-mother initially told the court that respondent-mother's "throat is basically swollen shut" and that "[s]he cannot speak," following the recess, counsel later informed the court that she had communicated "verbally" with respondent-mother "multiple times" during the recess. Similarly, although counsel for respondent-mother initially told the court that respondent-mother "was unable to come to court today" due to her illness, counsel informed the court following the recess that respondent-mother began walking to court after determining that she could not provide more documentation of her illness.
The trial court's finding of fact 3 is supported by the record, and given the information before the trial court and the lack of documentation of any illness of respondent-mother, the trial court could reasonably determine that respondent-mother did not sufficiently demonstrate any " 'extraordinary circumstances' that necessitated a continuance. ..." In re C.J.H. , 240 N.C. App. at 495, 772 S.E.2d at 87 ; see also In re T.H.T. , 185 N.C. App. 337, 343, 648 S.E.2d 519, 523 (2007) (" 'The trial [court] determines the weight to be given the [evidence] and the reasonable inferences to be drawn therefrom.' " (first alteration in original) (quoting In re Hughes , 74 N.C. App. 751, 759, 330 S.E.2d 213, 218 (1985) )), aff'd and modified on other grounds , 362 N.C. 446, 665 S.E.2d 54 (2008). Given the discretion afforded the trial court, we cannot say that the trial court's denial of respondent-mother's motion to continue was manifestly unsupported by reason.
B. Respondent-Father's Appeal
As an initial matter, respondent-father has filed a petition for writ of certiorari as an alternative basis for review of his case in recognition of the fact that his notice of appeal was untimely and that the attached certificate of service was unsigned and did not indicate a method of service. See N.C. Gen. Stat. § 7B-1001(b) (2017). In our discretion, we allow respondent-father's petition for writ of certiorari .
As his sole issue on appeal, respondent-father contends that the trial court erroneously deprived him of his right to be represented by counsel at the termination hearing. We agree.
"Parents have a 'right to counsel in all proceedings dedicated to the termination of parental rights.' " In re L.C. , 181 N.C. App. 278, 282, 638 S.E.2d 638, 641 (quoting In re Oghenekevebe , 123 N.C. App. 434, 436, 473 S.E.2d 393, 396 (1996) ), disc. review denied , 361 N.C. 354, 646 S.E.2d 114 (2007). "The parent has the right to counsel, and to appointed counsel in cases of indigency, unless the parent waives the right." N.C. Gen. Stat. § 7B-1101.1(a) (2017). Moreover, "[a] parent qualifying for appointed counsel may be permitted to proceed without the assistance of counsel only after the court examines the parent and makes findings of fact sufficient to show that the waiver is knowing and voluntary." N.C. Gen. Stat. § 7B-1101.1(a1).
Prior to the start of the termination hearing, respondent-father's appointed counsel, Mr. Cobb, informed the trial court that respondent-father wished to hire an attorney to represent him in the termination hearing, specifically the attorney who was representing him in a criminal matter. Mr. Cobb expressed that respondent-father "also informed me today that even if he's not able to retain an attorney, he wants the Court to appoint him a different attorney." The trial court stated that, absent respondent-father's substitute counsel being present and ready to proceed in the termination hearing, the court was not going to continue the case to allow respondent-father to obtain substitute counsel. Before the trial court recessed to allow respondent-mother's counsel opportunity to get in contact with respondent-mother, the court advised respondent-father to "[g]o talk to [Mr. Cobb] out in the hallway, and if you want to represent yourself, come back to the clerk's desk. We'll swear you to a waiver of all counsel." Respondent-father did not respond.
When the hearing resumed, Mr. Cobb informed the court that respondent-father had left the courthouse and not returned. Mr. Cobb stated that, in light of respondent-father's apparent dissatisfaction with Mr. Cobb's representation, he was asking to be allowed to withdraw as counsel for respondent-father. Mr. Cobb also asked that respondent-father be appointed new counsel and that the court continue the hearing. The trial court allowed Mr. Cobb's motion to withdraw but did not appoint new counsel or continue the hearing. The court stated that "if he were here to ask [for new appointed counsel], I suppose I would give him a stern lecture and then appoint the very last attorney we have on our Court-appointed list who would be available to represent him. But he is not here to make that request. ..." The trial court proceeded with the termination hearing without respondent-father present and without any counsel representing him.
The hearing transcript shows that respondent-father never waived his right to counsel. Mr. Cobb did not make a motion to withdraw when respondent-father was present before the hearing recessed, only stating that he had "gone round and round" with his client and that he believed he had "reached an impasse in [his] ability to further represent" respondent-father. Importantly, while Mr. Cobb stated that respondent-father wished to hire counsel or alternatively have new counsel appointed for him, there was never any indication from Mr. Cobb or respondent-father that, in the event the trial court were to deny respondent-father the opportunity to obtain new counsel, respondent-father would elect to represent himself rather than have Mr. Cobb continue his representation. As such, the trial court was never given any basis to believe that respondent-father wished to waive his right to counsel under any set of circumstances. The trial court also failed to examine respondent-father to determine that his waiver of the right to counsel was knowing and voluntary.
DSS and the GAL state that respondent-father is not entitled to relief on appeal because he has "unclean hands." They assert that respondent-father was attempting to delay the hearing and that, since respondent-father's failure to return following the recess prevented the court from obtaining a waiver of counsel, it is respondent-father's fault that he was not represented by counsel at the hearing. DSS and the GAL appear to assert that respondent-father forfeited his right to counsel. This position is without merit.
"Unlike waiver, which requires a knowing and intentional relinquishment of a known right, forfeiture results in the loss of a right regardless of the [parent's] knowledge thereof and irrespective of whether the [parent] intended to relinquish the right." State v. Montgomery , 138 N.C. App. 521, 524, 530 S.E.2d 66, 69 (2000) (quotation marks and citation omitted). "[F]orfeiture of the right to counsel has usually been restricted to situations involving egregious conduct[.]" State v. Blakeney , 245 N.C. App. 452, 461, 782 S.E.2d 88, 94 (2016).
[Although] [t]here is no bright-line definition of the degree of misconduct that would justify forfeiture of a defendant's right to counsel[,] ... forfeiture has generally been limited to situations involving "severe misconduct" and specifically to cases in which the defendant engaged in one or more of the following: (1) flagrant or extended delaying tactics, such as repeatedly firing a series of attorneys; (2) offensive or abusive behavior, such as threatening counsel, cursing, spitting, or disrupting proceedings in court; or (3) refusal to acknowledge the trial court's jurisdiction or participate in the judicial process, or insistence on nonsensical and nonexistent legal "rights."
Id. at 461-62, 782 S.E.2d at 94.
In the present case, respondent-father had received a continuance at a previously-scheduled termination hearing because he claimed to be ill. Though the trial court ordered that respondent-father bring a doctor's note for the illness to the rescheduled termination hearing, respondent-father did not subsequently produce a doctor's note. Respondent-father indicated at the rescheduled hearing that he was not satisfied with his counsel and desired to hire his own counsel or have new counsel appointed for him. Finally, after the recess, respondent-father failed to return to the courtroom. The trial court found that respondent-father "was attempting to delay the termination proceeding without just cause."
While respondent-father's actions could amount to an attempt to delay the termination hearing, we do not believe that respondent-father's conduct either prior to or at the termination hearing rose to the level of "flagrant or extended delaying tactics" described in Blakeney that could amount to a forfeiture of the right to counsel. Furthermore, respondent-father did not engage in "offensive or abusive behavior", nor did he outright refuse to participate in the judicial process. Given the need for "fundamentally fair procedures" "[w]hen the State moves to destroy weakened familial bonds," In re K.N. , 181 N.C. App. 736, 737, 640 S.E.2d 813, 814 (2007), the trial court erred to the extent it implicitly determined that respondent-father forfeited his right to counsel.
We note that a trial court is "not required to grant respondent's request to release counsel absent a substantial reason," and "[m]ere dissatisfaction with one's counsel is not a substantial reason for the appointment of replacement counsel." In re S.L.L. , 167 N.C. App. 362, 364-65, 605 S.E.2d 498, 499-500 (2004). Additionally, " '[s]tatements of a desire not to be represented by court-appointed counsel do not amount to expressions of an intention to represent oneself.' " Id. at 364, 605 S.E.2d at 499 (quoting State v. Hutchins , 303 N.C. 321, 339, 279 S.E.2d 788, 800 (1981) ).
It appears the trial court would have been free to deny respondent-father's request to substitute counsel, as he did not articulate any issue with Mr. Cobb's representation that went beyond "mere dissatisfaction." However, rather than proceed with the hearing with Mr. Cobb's continued representation of respondent-father, the trial court instead allowed Mr. Cobb to withdraw and left respondent-father without counsel at the hearing despite the fact that respondent-father never expressed a desire to proceed without the assistance of counsel under any circumstances. The trial court erred in depriving respondent-father of his right to counsel without a knowing and voluntary relinquishment of the right by respondent-father and without respondent-father forfeiting that right.
III. Conclusion
In sum, the trial court did not abuse its discretion in denying respondent-mother's motion to continue the termination hearing. As a result, we affirm the termination order in 16 JT 16 and affirm those portions of the orders in 16 JT 17-18 terminating respondent-mother's parental rights to the juveniles. However, the trial court erred in depriving respondent-father of his right to be represented by counsel at the termination hearing. As a result, we hereby vacate those portions of the orders in 16 JT 17-18 terminating respondent-father's parental rights to the juveniles and remand for a new hearing on the motions to terminate respondent-father's parental rights.
16 JT 16: ORDER AFFIRMED.
16 JT 17-18: ORDERS AFFIRMED IN PART; VACATED AND REMANDED IN PART.
Report per Rule 30(e).
Judges BRYANT and DIETZ concur

Pseudonyms are used throughout the opinion to protect the identity of the juveniles and for ease of reading.