IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-49

No. 289A20

Filed 23 April 2021

IN THE MATTER OF: L.R.L.B.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) and on writ of certiorari pursuant to N.C.G.S. § 7A-32(b) from orders entered on 31 March 2020 and 15 November 2019 by Judge Hal G. Harrison in District Court, Yancey County. This matter was calendared in the Supreme Court on 19 March 2021, but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Hockaday & Hockaday, P.A., by Daniel M. Hockaday, for petitioner-appellee Yancey County Department of Social Services.*

*Matthew D. Wunsche for appellee Guardian ad Litem.*

*Parent Defender Wendy C. Sotolongo and Deputy Parent Defender Annick Lenoir-Peek for respondent-appellant mother.*

MORGAN, Justice.

Respondent-mother appeals from the trial court's order terminating her parental rights to her son "Liam,"[1] and from the trial court's earlier permanency planning order which eliminated reunification from Liam's permanent plan. *See*

---

[1] A pseudonym is used to protect the juvenile's identity and to facilitate ease of reading.

N.C.G.S. § 7B-1001(a1)(1)–(2) (2019). The termination order also terminated the parental rights of Liam's father, who is not a party to this appeal. Due to our conclusion that the permanency planning order lacked findings which address one of the four issues contemplated by N.C.G.S. § 7B-906.2(d) (2019), we remand to the trial court for the entry of additional findings. However, because the resolution of respondent-mother's claim of error concerning the trial court's permanency planning order is accomplished by remand, instead of by vacation or reversal of the permanency planning order at issue as authorized by N.C.G.S. § 7B-1001(a2), it is presently premature for this Court to consider the trial court's order terminating respondent-mother's parental rights.

## I.  Factual and Procedural Background

On 29 August 2018, Yancey County Department of Social Services (DSS) obtained nonsecure custody of Liam, who was born almost a year earlier in September 2017. DSS filed a juvenile petition seeking an adjudication that Liam was neglected. The petition alleged that DSS had received a report in July 2018 that respondent-mother had been arrested for driving while impaired as Liam rode with her in the car. In a second report dated 25 July 2018, respondent-mother accused Liam's father of engaging in domestic violence against her and sexually molesting Liam. While a DSS investigation and a forensic examination of Liam would subsequently result in a determination that no sexual abuse had occurred, DSS's first visit with the family

following the receipt of the second report occurred while both parents were intoxicated and resulted in respondent-mother and Liam moving into a domestic violence shelter on the same day.

¶ 3     The petition further alleged that, following respondent-mother's transition to the domestic violence shelter, DSS received a series of telephone calls during the week of 20 August 2018 reporting changes in respondent-mother's behavior that raised concerns about Liam's safety. Shelter staff workers and Liam's father described respondent-mother as exhibiting "extreme paranoia, uncontrollable crying, [and] lapses in memory[,]" including occasions when she left Liam "completely unattended causing alarm to shelter staff and the agency." When DSS attempted to assist respondent-mother, she refused to cooperate with the social worker and treatment providers. Respondent-mother also refused to submit to a drug screen. Liam's father was excluded as a placement option "due to recent domestic violence incidents and ongoing concerns, a criminal history and an active substance abuse issue."

¶ 4     Respondent-mother obtained a comprehensive clinical assessment at RHA Health Services on 13 September 2018; she signed a Family Services Agreement (FSA) with DSS the following day. As part of her FSA, respondent-mother agreed to follow the recommendations of her comprehensive clinical assessment, including engaging in intermediate-level mental health and substance abuse services, along with parenting classes. Respondent-mother also agreed to obtain stable housing and

employment in order to demonstrate her ability to provide for Liam's needs.

¶ 5 After adjudicatory and dispositional hearings on 15 November and 12 December 2018, the trial court entered orders on 19 February 2019 adjudicating Liam as neglected and ordering DSS to maintain custody of the child. In ordering respondent-mother to comply with the requirements of her FSA, the trial court specifically mentioned respondent-mother's compliance with requested drug screens and granted her three hours of weekly supervised visitation with Liam. At an initial review hearing on 11 March 2019, the trial court found that respondent-mother had resumed living with Liam's father and ordered both parents to submit to a domestic violence assessment and to follow any resulting recommendations in addition to complying with the existing requirements of their respective case plans.

¶ 6 The trial court held a permanency planning hearing on 14 June 2019 during which it established a primary plan of reunification for Liam with a concurrent plan of adoption. At the next review hearing on 9 August 2019, the trial court found that, while respondent-mother had "completed some portions of her case plan" including parenting classes, she had tested positive for alcohol and amphetamines, and continued to exhibit inappropriate behaviors. Specifically, the trial court noted that respondent-mother had "acted in a disrespectful way to DSS workers and [did] not appreciate the DSS role in protecting the health, safety and welfare of her minor child[.]" The trial court ordered DSS to "promptly arrange a psychological evaluation

for the respondent-mother through Grandis." Respondent-mother was admonished by the trial court and was directed to "adopt a better attitude." She was ordered to cooperate with DSS, to abstain from using illicit substances, and to "make significant progress on her DSS case plan[.]" Despite the identified concerns, the trial court maintained Liam's permanent plan as reunification with a concurrent plan of adoption.

Following the next review hearing on 11 October 2019, the trial court entered a permanency planning order on 15 November 2019 which relieved DSS of further reunification efforts and changed Liam's permanent plan to adoption. On 13 January 2020, respondent-mother filed notice pursuant to N.C.G.S. § 7B-1001(a1)(2)(a) (2019) to preserve her right to appeal the order eliminating reunification from the permanent plan[2].

On 8 January 2020, DSS filed a petition to terminate the parental rights of respondent-mother and Liam's father. The trial court held a hearing to address the petition on 12 March 2020 and entered an order terminating the parental rights of both parents on 31 March 2020. The trial court adjudicated the existence of grounds

---

[2] Although respondent-mother filed her notice beyond the required thirty days as established by N.C.G.S. §§ 7B-1001(a1)(2)(a) & (b) (2019), after entry and service of the order, nonetheless we allowed respondent-mother's petition for writ of certiorari to review the permanency planning order along with the order terminating her parental rights entered on 18 December 2020. *See generally In re S.C.R.*, 198 N.C. App. 525, 531 (holding respondent-parent waived appellate review under former statute authorizing appeal from order ceasing reunification efforts by failing to give timely notice of his intent to appeal), *appeal dismissed*, 363 N.C. 654 (2009).

for termination under N.C.G.S. § 7B-1111(a)(1)–(2) (2019), based on respondent-mother's neglect of Liam and on her willful failure to make reasonable progress to correct the conditions that led to the juvenile's removal from the home in August 2018. After considering the dispositional factors enumerated in N.C.G.S. § 7B-1110(a) (2019), the trial court concluded that it was in Liam's best interests for the rights of both parents to be terminated.

## II. Respondent-mother's Appeal

Respondent-mother filed her notice of appeal from the 15 November 2019 permanency planning order which eliminated reunification from Liam's permanent plan and from the 31 March 2020 termination order which terminated respondent-mother's parental rights. *See* N.C.G.S. § 7B-1001(a1) (2019). Pursuant to N.C.G.S. § 7B-1001(a2) (2019), we "review the order eliminating reunification together with an appeal of the order terminating parental rights."

Respondent-mother limits her appeal to challenges to the trial court's 15 November 2019 permanency planning order. Although she does not identify any error in the order terminating her parental rights, respondent-mother contends that the alleged reversible errors in the permanency planning order require us to vacate the termination order under N.C.G.S. § 7B-1001(a2), which provides that "[i]f the order eliminating reunification is vacated or reversed, the order terminating parental rights shall be vacated."

## A. Standard of review

Our review of a permanency planning order " 'is limited to whether there is competent evidence in the record to support the findings [of fact] and whether the findings support the conclusions of law.' The trial court's findings of fact are conclusive on appeal if supported by any competent evidence." *In re L.M.T.*, 367 N.C. 165, 168 (2013) (alteration in original) (quoting *In re P.O.*, 207 N.C. App. 35, 41 (2010)). The trial court's dispositional choices—including the decision to eliminate reunification from the permanent plan—are reviewed only for abuse of discretion, as those decisions are based upon the trial court's assessment of the child's best interests. *See In re J.H.*, 373 N.C. 264, 267–68 (2020).

## B. Challenged findings

Respondent-mother challenges several portions of the trial court's Finding of Fact 6 in its permanency planning order, claiming that those portions are "either not supported or contrary to the evidence." Although respondent-mother offers no argument or discussion about the significance of these asserted errors, we address each of her challenges to the trial court's findings in turn. Finding of Fact 6 states, in pertinent part:

> that since the matter was last reviewed, the juvenile has remained in foster care placement; that the respondent parents have signed DSS case plans; that respondent mother has completed Triple P Parenting; obtained her [comprehensive clinical assessment]; completed intensive outpatient substance abuse treatment; is now engaged in

> the intermediate SA program; reports that she attends AA/NA weekly; has provided clean drug screens through RHA but has tested positive on two (2) occasions for alcohol; has participated in peer support and medication management through RHA; has not complied with DSS requested drug screens; has not maintained stable residence; has not maintained stable employment; has received three (3) separate sanctions through Yancey Drug Court (one (1) occasion for missed appointment and two (2) occasions for failed screens for alcohol); has not obtained her psychological evaluation (delayed scheduling the evaluation until recently); that the respondent father . . . has a pending criminal charge for assault (respondent mother is the alleged victim); . . . the respondent parents (despite current Release Order in the pending criminal matter) are currently residing with each other; that there have been recent incidents of domestic violence and continued alcohol abuse; that the parents recently were evicted from their prior residence; that the juvenile was removed from the care of the respondent parents as a result of domestic violence and substance abuse issues; that the parents have not made reasonable progress on their DSS case plan to eliminate the issues the juvenile [sic] came into custody . . . .

All portions of this finding which are not specifically contested by respondent-mother are deemed to be supported by competent evidence and are binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97 (1991).

¶ 13 Respondent-mother first objects to the trial court's determination that she tested positive for alcohol on two occasions, asserting that "those [positive tests] occurred several months prior to the 11 October 2019 hearing, on 22 March 2019 and 27 May 2019." While respondent-mother accurately characterizes the evidence, her observation does not undercut the evidentiary support for the trial court's finding in

any way. Finding of Fact 6 reflects the trial court's summary of respondent-mother's progress through the entirety of the case, as reflected by the determinations that she had signed a DSS case plan, obtained a comprehensive clinical assessment, and completed parenting classes. The evidence introduced at the hearing showed that respondent-mother had five positive drug screens at RHA between 6 March 2019 and 2 July 2019, four of which included a positive result for alcohol. While the trial court did find that Liam had remained in his foster placement "since the matter was last reviewed," it did not purport to limit its remaining findings to that sole time interval. Therefore, the trial court's unconditional determination that respondent-mother "tested positive on two (2) occasions for alcohol" is supported by competent evidence and is binding on appeal.

¶ 14        Respondent-mother next challenges the determination within Finding of Fact 6 that she "has not complied with DSS requested drug screens[.]" Respondent-mother represents that she submitted to drug screens as requested by DSS on 30 July 2019 and on 7 and 14 August 2019, "in addition to the multiple screens she undertook with RHA and Drug Treatment Court." However, competent evidence supports the challenged portion of the finding. DSS social worker Tammy Carpenter testified at the hearing that respondent-mother failed to comply with the agency's call-in system for drug screens, through which parents are assigned "dates and times they need to call" to be notified as to whether to appear for a drug screen that day. DSS also

introduced a log of respondent-mother's call schedule for a period of time between 8 and 31 July 2019 which reflected that respondent-mother placed telephone calls to DSS on only three of the fifteen days that she was assigned to contact DSS through its call-in system. While the evidence does show that negative drug screens for respondent-mother were registered on the three dates listed by her, other competent evidence supports the finding that she was not fully compliant with DSS's drug screen requests. This challenged portion of the trial court's Finding of Fact 6 is thus binding on appeal. *See In re L.M.T.*, 367 N.C. at 168.

¶ 15 Respondent-mother also disputes the determination that she failed to maintain stable housing because the evidence "show[ed] that she had lived at the same address for over a year prior to her eviction." However, respondent-mother's argument is contradictory. As respondent-mother acknowledged in her testimony, she and Liam's father were evicted from their apartment in the weeks leading up to the 11 October 2019 permanency planning hearing. Respondent-mother testified that she stayed with her mother for a period of time thereafter, but moved into a new apartment with Liam's father two weeks before the hearing date. DSS social worker Carpenter testified that she had "no idea" where respondent-mother had resided since respondent-mother's eviction and that respondent-mother had not complied with the housing component of respondent-mother's case plan. Respondent-mother's admission that she was evicted from her home after some period of time exceeding

just more than one year, followed by her two different residences shortly before the permanency planning hearing date of 11 October 2019, does not comport with the maintenance of stable housing by respondent-mother. These circumstances coupled with the testimony of the DSS social worker concerning the stability of respondent-mother's housing provide ample credence to the trial court's determination contained in Finding of Fact 6 that respondent-mother "has not maintained stable residence."

¶ 16    Respondent-mother next challenges the trial court's finding that she received "three . . . separate sanctions" in drug treatment court. Respondent-mother correctly notes that the hearing testimony established two, rather than three, occasions for which respondent-mother was sanctioned in drug court: once for missing an appointment and once for a positive alcohol screen. We shall disregard the trial court's erroneous finding of a third sanction, which we deem to be a harmless error in light of the unequivocal existence of two separate sanctions. *See In re B.E.*, 375 N.C. 730 (2020).

¶ 17    Finally, respondent-mother likewise takes issue with the trial court's determination "that there have been recent incidents of domestic violence and continued alcohol abuse," contending that the evidence showed only one additional incident of domestic violence between her and Liam's father. As support for her stance, respondent-mother points to the arrest warrant included in the record on appeal which charges Liam's father with an assault on respondent-mother which was

allegedly committed on 26 September 2019.

¶ 18     Assuming *arguendo* that the evidence showed only a single episode of domestic violence between respondent-mother and Liam's father, which was recent at the time of the trial court's determination, we discern no error. Respondent-mother's argument is based upon her convenient construction of the trial court's phraseology in its determination and does not constitute a substantive objection. We believe the phrase "recent incidents of domestic violence and continued alcohol abuse" may be fairly interpreted to combine one or more recent incidents of domestic violence with one or more recent incidents of continued alcohol abuse. We further note that, in addition to the evidence that Liam's father allegedly assaulted respondent-mother on 26 September 2019, DSS social worker Carpenter testified that the couple's landlord reported that the eviction of respondent-mother and Liam's father from their apartment transpired "because of domestic violence, yelling, arguing, people call[ing] and telling him that [respondent-mother and Liam's father] were making a fuss all the time[,] and due to finding lots of alcohol, liquor bottles outside of the residence." This testimony tends to establish a series of occurrences of domestic violence and alcohol abuse rather than, as respondent-mother contends, one solitary additional incident. Consequently, the trial court's reference to multiple "incidents" is properly supported and binding on appeal. *In re L.M.T.*, 367 N.C. at 168.

## C. Sufficiency of Findings

Respondent-mother claims that the trial court erred in eliminating reunification from Liam's permanent plan without making the findings of fact which are required by N.C.G.S. § 7B-906.2(d) (2019).[3] While the trial court complied with the majority of N.C.G.S. § 906.2(d)'s mandate regarding the establishment of specific findings of fact which the trial court must reduce to writing as a preface to the elimination of reunification from the permanent plan, we agree with respondent-mother that the trial court's findings are sufficiently inadequate so as to compel us to remand the case to the trial court for the entry of additional findings consistent with the mandate of N.C.G.S. 7B-906.2(d).

Under N.C.G.S. § 7B-906.2(b) (2019), the trial court may eliminate reunification from a child's permanent plan if the trial court "makes written findings that reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety." *Id*. Subsection (d) of the statute further provides that, in making its determination about the appropriate permanent plan,

> the court shall make written findings as to each of the following, which shall demonstrate the degree of success or

---

[3] Respondent-mother notes that the trial court's failure to include a secondary permanent plan in the 15 November 2019 permanency planning order would appear to violate N.C.G.S. § 7B-906.2(a1) and (b) (2019), under which the trial court must designate concurrent permanent plans "until a permanent plan is or has been achieved." Respondent-mother concedes, however, that the trial court established concurrent plans of adoption and guardianship at the next permanency planning hearing on 13 January 2020, "thereby rendering [her] argument moot."

failure toward reunification:

> (1) Whether the parent is making adequate progress within a reasonable period of time under the plan.
>
> (2) Whether the parent is actively participating in or cooperating with the plan, the department, and the guardian ad litem for the juvenile.
>
> (3) Whether the parent remains available to the court, the department, and the guardian ad litem for the juvenile.
>
> (4) Whether the parent is acting in a manner inconsistent with the health or safety of the juvenile.

N.C.G.S. § 7B-906.2(d).

We have held that "[t]he trial court's written findings must address the statute's concerns, but need not quote its exact language." *In re L.M.T.*, 367 N.C. at 168 (interpreting former N.C.G.S. § 7B-507(b)(1) (2011)). "Instead, 'the order must make clear that the trial court considered the evidence in light of whether reunification would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time.' " *In re L.E.W.*, 375 N.C. 124, 129–30 (2020) (quoting *In re L.M.T.*, 367 N.C. at 168).

Moreover, when reviewing an order that eliminates reunification from the permanent plan in conjunction with an order terminating parental rights pursuant to N.C.G.S. § 7B-1001(a1)(2), "we consider both orders 'together' " as provided in N.C.G.S. § 7B-1001(a2). *In re L.M.T.*, 367 N.C. at 170. Based on this statutory directive, we concluded in *In re L.M.T.* that "incomplete findings of fact in the cease

reunification order may be cured by findings of fact in the termination order."[4] *Id.* Although respondent-mother contends that a 2017 amendment to N.C.G.S. § 7B-1001 "abrogated" our ruling in *In re L.M.T.* on this issue, we find her argument unpersuasive.

¶ 23        In Session Law 2017-41, § 8, 2017 N.C. Sess. Laws 214, 233, the General Assembly amended N.C.G.S. § 7B-1001 to transfer appellate jurisdiction in termination of parental rights cases from the Court of Appeals to this Court effective 1 January 2019. The session law deleted a portion of N.C.G.S. § 7B-1001(a)(5) requiring the Court of Appeals to "review the order eliminating reunification as a permanent plan together with an appeal of the termination of parental rights order[,]" and inserted the following text in a revised version of N.C.G.S. § 7B-1001(a2):

> In an appeal filed pursuant to subdivision (a1)(2) of this section, the Supreme Court shall review the order eliminating reunification *together* with an appeal of the order terminating parental rights. *If the order eliminating reunification is vacated or reversed, the order terminating parental rights shall be vacated.*

---

[4] At the time of our decision in *In re L.M.T.*, a parent's right to appeal from a permanency planning order was triggered by the trial court's cessation of reunification efforts rather than its elimination of reunification from the permanent plan as in current N.C.G.S. §§ 7B-1001(a)(5) and (a1)(2) (2019). *In re L.M.T.*, 367 N.C. at 167–70 (discussing former N.C.G.S. §§ 7B-507(b)(1) and 7B-1001(a)(5) (2011)). Section 7B-906.2 now directs the trial court to "order the county department of social services to make efforts toward finalizing the primary and secondary permanent plans" until permanence is achieved. N.C.G.S. § 7B-906.2(b).

S.L. 2017-41, § 8(a), 2017 N.C. Sess. Laws at 233 (emphasis added). The amended statute thus retained the requirement that the appellate court review the two orders "together" while adding language to require that if this Court vacates or reverses the order eliminating reunification from the permanent plan, we must also vacate the termination of parental rights order. *Id.*

As opposed to respondent-mother's interpretation, we do not construe the 2017 amendment to N.C.G.S. § 7B-1001 to alter the approach that we adopted in *In re L.M.T.*; the amendment, on its face, merely precludes a determination by this Court that a harmful error in an order eliminating reunification from a permanent plan can be rendered moot solely by the subsequent entry of an order terminating parental rights. *Cf., e.g., In re H.N.D.*, 265 N.C. App. 10, 19 (2019) ("hold[ing] that the question of whether the trial court erred in ceasing reunification efforts was rendered moot by the proper termination order")[5]. For this reason, we reject the argument of the guardian ad litem in the present case that the order terminating respondent-mother's parental rights "moots [respondent-mother's] arguments about the order ceasing reunification efforts." As for respondent-mother's construction of the 2017 legislative amendment and her view of the amendment's impact on *In re L.M.T.*, respondent-

---

[5] The Court of Appeals exercised its jurisdiction in the case of *In re H.N.D.* prior to the transfer of appellate jurisdiction in termination of parental rights cases from the Court of Appeals to this Court and revision of N.C.G.S. § 7B-1001(a)(2) which was accomplished by the General Assembly in Session Law 2017-41, § 8, 2017 N.C. Sess. Laws 214, 233.

mother erroneously conflates a fatally defective order eliminating reunification from a permanent plan, which cannot be cured by the subsequent termination order, with an incomplete order with insufficient findings of fact, which may be cured under *In re L.M.T.* by findings of fact in the termination order.

¶ 25        In light of these observations, we recognize that the trial court's 15 November 2019 permanency planning order includes findings "that reunification is no longer the appropriate permanent plan for the juvenile" and "[t]hat further reasonable efforts to prevent or eliminate the need for placement of the juvenile are clearly futile or inconsistent with the juvenile's need for a safe, permanent home within a reasonable period of time." The trial court thus made the finding required by N.C.G.S. § 7B-906.2(b) to eliminate reunification from the permanent plan. *See In re L.E.W.*, 375 N.C. at 133. However, with regard to N.C.G.S. § 7B-906.2(d), although the trial court's findings of fact adequately address the issues reflected in N.C.G.S. § 7B-906.2(d)(1), (2), and (4), the tribunal's findings fail to address the issue in N.C.G.S. § 7B-906.2(d)(3), "[w]hether the parent remains available to the court, the department, and the guardian ad litem for the juvenile." As a result, we deem it to be appropriate to remand this matter to the trial court in order to rectify the order's deficiencies.

¶ 26        Consistent with N.C.G.S. § 7B-906.2(d)(1), the trial court addresses in Finding of Fact 6 whether each parent is making adequate progress within a reasonable time under the permanent plan by detailing their achievements and shortcomings in

meeting the conditions of their respective case plans. The trial court goes on to make an express finding "that the parents have not made reasonable progress on their DSS case plan to eliminate the issues [since] the juvenile came into custody[.]" The trial court's determinations contained in Finding of Fact 6 also note that Liam had been in DSS custody for more than twelve months and identify "the parents' failure to comply with their case plan requirements" as "the barrier to . . . reunification[.]" To the extent that respondent-mother contends that Finding of Fact 6 shows that she "made adequate progress" by obtaining a comprehensive clinical assessment, completing parenting classes, participating in substance abuse treatment, and providing several clean drug screens, we conclude that the trial court's contrary evaluation is a reasonable view of the evidence and is therefore binding on appeal. *See generally In re D.L.W.*, 368 N.C. 835, 843 (2016) (recognizing the trial court's authority as fact-finder to weigh competing evidence and draw reasonable inferences therefrom); *see also In re J.H.*, 373 N.C. at 270 (finding "ample evidentiary support for the trial court's finding that respondent only made 'some progress' with respect to her parenting skills").

¶ 27        Similarly, with regard to N.C.G.S. § 7B-906.2(d)(2), Finding of Fact 6, in addressing whether the parents are actively participating in or cooperating with the plan, the department, and the guardian ad litem for the juvenile, adequately describes respondent-mother's degree of participation with her case plan and

indicates her non-cooperation with DSS drug screens. This portion of the finding of fact featured the evidence adduced at the hearing of respondent-mother's inability to address the domestic violence, housing, and substance abuse issues which resulted in Liam's removal from her care. These determinations by the trial court satisfy the requirements of Section 7B-906.2(d)(2), and are analogous to the trial court's findings which were deemed to have satisfactorily addressed this subsection of the statute by the Court of Appeals in *In re N.T.*, 264 N.C. App. 753, 2019 WL 1471147, *6 (2019) (unpublished).

¶ 28 Although the trial court made no specific finding as to whether respondent-mother was "acting in a manner inconsistent with the health or safety of the juvenile" under the exact language of N.C.G.S. § 7B-906.2(d)(4), the trial court found that respondent-mother and Liam's father were residing together despite "recent incidents of domestic violence and continued alcohol abuse"—the very problems that necessitated Liam's removal from the home; that Liam's father had yet to complete his court-ordered domestic violence assessment; and that returning Liam to his parents' home would be "contrary to his welfare and best interests at this time." The trial court also concluded in its 15 November 2019 permanency planning order that further efforts to "eliminate the need for placement" of Liam outside of the home would be "inconsistent with the juvenile's need for a safe, permanent home within a reasonable period of time." Further, the termination order contains additional

uncontested findings that respondent-mother failed to maintain stable housing; that she "never obtained her [court-ordered] psychological evaluation" and "was kicked out of the [drug treatment court program] for noncompliance"; and that the failure of respondent-mother and Liam's father to "eliminate those reasons the juvenile came into custody demonstrates their continued neglect of [Liam] and the probability of future neglect if [Liam] is returned to their care." *See generally In re Stumbo*, 357 N.C. 279, 283 (2003) ("requir[ing] that there be some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment" in order for a parent's conduct to constitute "neglect"). We conclude that these findings by the trial court adequately address the substance and concerns of N.C.G.S. § 7B-906.2(d)(4) through the application of the principle in *In re L.M.T.*, 367 N.C. at 168, in which we recognized earlier that the trial court is not required to quote the exact language of N.C.G.S. § 7B-906.2(d)(4) as long as the trial court's written findings address the statute's concerns.

However, we agree with respondent-mother that the trial court failed to make the findings required by N.C.G.S. § 7B-906.2(d)(3), as to whether respondent-mother "remains available to the court, the department, and the guardian ad litem[.]" Aside from acknowledging respondent-mother's attendance at the 11 October 2019 permanency planning hearing and referencing her absence from the termination hearing on 12 March 2020, the trial court found no facts addressing the issue

embodied in Section 7B-906.2(d)(3) with regard to respondent-mother.[6] *In re L.M.T.*, 367 N.C. at 168. While the record contains little evidence presented by the parties on the issue of respondent-mother's availability as contemplated by the statute, we note that DSS's written report to the trial court for the permanency planning hearing includes information about respondent-mother's attendance at court dates and scheduled visitations, as well as her failure to attend child and family team (CFT) meetings. The report submitted by the guardian ad litem also alludes to respondent-mother's failure to attend CFT meetings and states that "[t]he GAL has spoken to the parents three times but . . . has had no significant interactions in the last six months." This information contained in the respective reports of DSS and the GAL, however, does not satisfy the trial court's statutory obligation to fulfill the requirements of N.C.G.S. § 7B-906.2(d)(3) by making written findings on the issue of respondent-mother's availability.

Having concluded that the trial court failed to make the findings of fact required by N.C.G.S. § 7B-906.2(d)(3), the identification of the appropriate remedy for the omission has provided the next determination for this Court. In citing N.C.G.S. § 7B-1001(a2) for her assertion that the trial court's non-compliance with N.C.G.S. § 7B-906.2(d) in the order eliminating reunification from the permanent

---

[6] The permanency planning order includes a finding that Liam's father "has not maintained consistent contact with DSS[,]" thereby addressing at least part of the statutory mandate as to him.

plan "requires reversal of both [the permanency planning order] and the resulting termination order," respondent-mother identifies two cases in which the Court of Appeals vacated a permanency planning order because " 'the trial court failed to make the requisite findings required to cease reunification efforts' under Section 7B-906.2(d)." *In re J.M.*, 843 S.E.2d 668, 676 (N.C. Ct. App. 2020) (quoting *In re D.A.*, 258 N.C. App. 247, 254 (2018)).

¶ 31   It is axiomatic that "this Court is not bound by precedent of our Court of Appeals[.]" *In re B.L.H.*, 376 N.C. 118, 126 (2020). Moreover, as we discuss below, we find neither *In re J.M.* nor *In re D.A.* to be instructive in our determination regarding the implementation of the directive in N.C.G.S. § 7B-1001(a2) that, "[i]f the order eliminating reunification is vacated or reversed, the order terminating parental rights shall be vacated." N.C.G.S. § 7B-1001(a2).

¶ 32   In *In re J.M.*, the respondent-mother appealed from a permanency planning order that placed her child in the guardianship of the juvenile's foster parents, waived further review hearings, and relieved DSS of reunification efforts. 843 S.E.2d at 670, 676; *see also* N.C.G.S. § 7B-1001(a)(4). Hence, the appeal was taken from a single order which transferred the child's legal custody, *see* N.C.G.S. § 7B-1001(a)(4) (2019), and did not address a subsequent order terminating the respondent's parental rights. The Court of Appeals vacated the portion of the order ceasing reunification efforts due to the trial court's failure to make findings under N.C.G.S. § 7B-906.2(d)(2)–(3),

while affirming the order in part as to the guardianship provisions and the waiver of further review hearings. *Id.* at 676.

¶ 33    In *In re D.A.*, the Court of Appeals vacated a permanency planning order that granted custody of the respondents' child to the juvenile's foster parents. 258 N.C. App. at 248. As in *In re J.M.*, the appeal was taken from a single order transferring the legal custody of the child. The Court of Appeals held that the trial court's findings did not support its conclusion that the father had acted inconsistently with his constitutionally protected status as a parent, the *sine qua non* of an award of permanent custody of the child to a non-parent. *Id.* at 252. While the Court of Appeals also concluded that "[t]he trial court failed to make findings related to whether [r]espondents were acting in a manner inconsistent with D.A.'s health or safety" under N.C.G.S. § 7B-906.2(d)(4), the lower appellate court further held that the trial court made "no findings that embrace the requisite ultimate finding that 'reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety' " as required to eliminate reunification from the child's permanent plan under N.C.G.S. § 7B-906.2(b). *Id.* at 254. The deficiencies in the order in *In re D.A.* materially exceeded the mere lack of findings under one of the specified issues of N.C.G.S. § 7B-906.2(d), and therefore justified the vacation of the order in the case. *Id.*; *see also In re D.C.*, 852 S.E.2d 694, 698–99 (N.C. Ct. App. 2020) ("Because the trial court ceased reunification efforts without making sufficient

findings pertinent to section 7B-906.2(d) and the ultimate finding required by section 7B-906.2(b), we vacate the trial court's orders and remand for further proceedings.").

¶ 34        Due to these critical distinctions, neither *In re J.M.* nor *In re D.A.* presents this Court with correlating examples of the manner in which to settle an order's termination of a respondent's parental rights when an earlier permanency planning order does not include sufficient written findings as to one of the four issues—but does include findings on the ultimate issue—which must be addressed as a preface to the elimination of reunification from the permanent plan, where this Court must consider both orders together, adhere to N.C.G.S. § 7B-1001 (a1)(2) and the amended § 7B-1001(a2), and comply with our precedent in *In re L.M.T.*

¶ 35        We do not discern that the Legislature enacted N.C.G.S. § 7B-1001(a2) with the intention of disengaging an entire termination of parental rights process in the event that a trial court omits a single finding under N.C.G.S. § 7B-906.2(d)(1)–(4) from its trial court order which eliminates reunification from a child's permanent plan. Unlike the specific finding that "reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety" which is required by N.C.G.S. § 7B-906.2(b) before eliminating reunification from the permanent plan, no particular finding under N.C.G.S. § 7B-906.2(d)(3) is required to support the trial court's decision. N.C.G.S. § 7B-906.2(d) merely requires the trial court to make "written findings as to each of the" issues enumerated in N.C.G.S. §

7B-906.2(d)(1)–(4), and to consider whether the issues "demonstrate the [parent's] degree of success or failure toward reunification[.]" N.C.G.S. § 7B-906.2(d). A finding that the parent has remained available to the trial court and other parties under N.C.G.S. § 7B-906.2(d)(3) does not preclude the trial court from eliminating reunification from the permanent plan based on the other factors in N.C.G.S. § 7B-906.2(d). *Cf. In re R.D.*, 376 N.C. 244, 259 (2020) (concluding that the balancing of the six dispositional factors in N.C.G.S. § 7B-1110(a) "is uniquely reserved to the trial court and will not be disturbed by this Court on appeal").

"[T]o obtain relief on appeal, an appellant must not only show error, but that . . . the error was material and prejudicial, amounting to denial of a substantial right that will likely affect the outcome of an action." *In re L.E.W.*, 375 N.C. at 128. It is the trial court's authority as the finder of fact to assign weight to various pieces of evidence, *In re D.L.W.*, 368 N.C. at 843, in exercising "its discretion [to] determine[e] that ceasing reunification [is] in the best interests of the child[,]" *In re J.H.*, 373 N.C. at 270. Upon considering the trial court's order that eliminated reunification from the permanent plan together with its order terminating parental rights, and determining that the trial court's order eliminating reunification may be cured upon remand to the trial court—pursuant to the application of *In re L.M.T.*—due to insufficient findings of fact contained in the order because it does not address the issue embodied in N.C.G.S. § 7B-906.2(d)(3) as to "whether the parent remains available to the court,

the department, and the guardian ad litem for the juvenile," we conclude that respondent-mother has not shown that the trial court's error was material and prejudicial so as to warrant vacating and reversing the permanency planning order at issue and vacating the termination of parental rights order.

We therefore believe that the appropriate remedy for the trial court's error here is to remand this matter to the trial court for the entry of additional findings in contemplation of N.C.G.S. § 7B-906.2(d)(3). *Cf. In re N.K.*, 375 N.C. 805, 825 (2020) (remanding for findings on the trial court's compliance with the Indian Child Welfare Act (ICWA)); *State v. Peterson*, 344 N.C. 172, 177–178 (1996) (holding no error in part as to the judgment but remanding in part for further findings on suppression issue). This Court's precedent, especially our express determination in *In re L.M.T.* regarding the relationship between incomplete findings in an order which ceases reunification efforts and the findings of fact in a subsequent termination of parental rights order, authorizes such a remedy. In the event that the trial court concludes, after making additional findings, that its decision to eliminate reunification from the juvenile Liam's permanent plan in its 15 November 2019 permanency planning order was in error, then the trial court shall vacate said order as well as vacate the order terminating respondent-mother's parental rights, enter a new permanent plan for the juvenile that includes reunification, and resume the permanency planning review process. *See* N.C.G.S. § 7B-1001(a2); *cf. In re N.K.*, 375 N.C. at 825 ("In the event that

the trial court determines on remand that Ned is, in fact, an Indian child, it shall vacate the trial court's termination order and proceed in accordance with the relevant provisions of ICWA." (extraneity omitted)). If the trial court's additional findings under N.C.G.S. § 7B-906.2(d)(3) do not alter its finding under N.C.G.S. § 7B-906.2(b) that further reunification efforts "are clearly futile or inconsistent with the juvenile's need for a safe, permanent home within a reasonable period of time[,]" then the trial court may simply amend its permanency planning order to include the additional findings, and the 31 March 2020 order terminating respondent-mother's parental rights may remain undisturbed. *Cf. In re N.K.*, 375 N.C. at 825 ("[If] the trial court concludes upon remand, after making any necessary findings or conclusions, that the notice requirements of ICWA were properly complied with . . . , it shall reaffirm the trial court's termination order.").

## III.    Conclusion

¶ 38        Respondent-mother does not identify any error in the order terminating her parental rights as to the child Liam, and we do not consider the termination order in this decision. With regard to the order eliminating reunification from Liam's permanent plan, competent evidence supports all of the trial court's findings of fact except for its finding that respondent-mother was sanctioned three times in drug treatment court; in determining from the evidence that respondent-mother was sanctioned on two occasions in drug treatment court rather than on three occasions

as the trial court erroneously found, we conclude that this constitutes harmless error by the trial court. We further hold that the trial court sufficiently addressed the majority of the issues mandated by N.C.G.S. § 7B-906.2, and that this substantial compliance with the statute obviates the need for vacation or reversal of the trial court's order eliminating reunification from the permanent plan, since there is the availability of a sanctioned remedy which is less drastic and more plausible. Consequently, in light of the trial court's failure to make written findings as required by N.C.G.S. § 7B-906.2(d)(3), we remand to the District Court, Yancey County, to enter such necessary findings and to determine whether those findings affect its decision to eliminate reunification from the permanent plan pursuant to N.C.G.S. § 7B-906.2(b). The trial court may receive additional evidence upon this remand as it deems appropriate within its sound discretion, and shall enter new or amended orders consistent with this opinion. *See In re K.R.C.*, 374 N.C. 849, 865 (2020).

REMANDED.