ASHLEY STEPHENSON, ET AL., PLAINTIFFS v. GARY O. BARTLETT, ET AL., DEFENDANTS

No. COA05-793

(Filed 18 April 2006)

**1. Appeal and Error— notice of appeal—court to which appeal taken not specified—fairly inferred—jurisdiction assumed**

Jurisdiction to decide an appeal was assumed where plaintiffs mistakenly specified the Supreme Court rather than the Court of Appeals as the court to which appeal was taken, as required by Appellate Rule 3(d). The intent to appeal to the Court of Appeals can be fairly inferred from the notice of appeal, which achieved the functional equivalent of an appeal to the Court of Appeals. Defendants were not misled by plaintiffs' mistake, and there is no reason to treat it any differently than mistakes involving other parts of Appellate Rule 3(d) despite which jurisdiction was found.

**2. Costs— attorney fees—private attorney general doctrine—rejected**

The trial court correctly denied plaintiffs' request for attorney fees, which was based on N.C.G.S. § 6-19.1, 42 U.S.C. § 1988, and the private attorney general doctrine. Neither statute authorizes attorney fees under the facts of this case, and the North Carolina Supreme Court has unequivocally noted that attorney fees are not allowed as part of court costs in the absence of statu-

tory authority. *Bailey v. State of North Carolina*, 348 N.C. 130, is not applicable.

Appeal by plaintiffs from order entered 19 November 2004 by Judge Robert H. Hobgood in Wake County Superior Court. Heard in the Court of Appeals 20 February 2006.

*Ogletree, Deakins, Nash, Smoak & Stewart, P.C., by Thomas A. Farr and Phillip J. Strach; Maupin Taylor, P.A., by Charles B. Neely, Jr.; and Hunter Higgins Miles Elam & Benjamin, PLLC, by Robert N. Hunter, Jr., for plaintiff-appellants.*

*Roy Cooper, Attorney General, by Tiare B. Smiley and Alexander McC. Peters, Special Deputy Attorneys General, for the State.*

MARTIN, Chief Judge.

The procedural context and operative facts of this case are fully set forth in *Stephenson v. Bartlett*, 355 N.C. 354, 562 S.E.2d 377 (2002) ("*Stephenson I*"), *Stephenson v. Bartlett*, 357 N.C. 301, 582 S.E.2d 247 (2003) ("*Stephenson II*"), and *Stephenson v. Bartlett*, 358 N.C. 219, 595 S.E.2d 112 (2004) ("*Stephenson III*"), which was consolidated for. hearing with *Morgan v. Stephenson*, 358 N.C. 149 (2004). During the interim between *Stephenson II* and *Stephenson III*, plaintiffs filed a motion seeking costs and attorney fees, which was held in abeyance until our Supreme Court rendered its decision in *Stephenson III* on 22 April 2004. Subsequently, on 19 November 2004, the trial court entered an order denying plaintiffs' request for attorney fees "based on the lack of statutory authority for such an award."

Following entry of the trial court's order, plaintiffs gave "notice of appeal to the Supreme Court of North Carolina from the portion of the Order . . . by which the court denied plaintiffs' motion for attorney's fees." However, our Supreme Court denied plaintiffs' motion to allow direct appeal. *Stephenson v. Bartlett*, 359 N.C. 286, 610 S.E.2d 715 (2005). Plaintiffs did not, thereafter, file notice of appeal to this Court.

[1] Parties permitted by law to appeal from a judgment or order must do so by filing an appropriate notice of appeal. N.C.R. App. P. 3. Subdivision (d) of Rule 3 governs the content of the notice of appeal and provides as follows:

STEPHENSON v. BARTLETT

[177 N.C. App. 239 (2006)]

> The notice of appeal required to be filed and served by sub-division (a) of this rule . . . shall designate the judgment or order from which appeal is taken and the court to which appeal is taken . . . .

*Id.* "In order to confer jurisdiction on the state's appellate courts, appellants of lower court orders must comply with the requirements of Rule 3 of the North Carolina Rules of Appellate Procedure." *Bailey v. State*, 353 N.C. 142, 156, 540 S.E.2d 313, 322 (2000). "The provisions of Rule 3 are jurisdictional, and failure to follow the requirements thereof requires dismissal of an appeal." *Abels v. Renfro Corp.*, 126 N.C. App. 800, 802, 486 S.E.2d 735, 737 (1997) (citing *Currin-Dillehay Bldg. Supply, Inc. v. Frazier*, 100 N.C. App. 188, 189, 394 S.E.2d 683 (1990)).

Though defendants raised no objection to plaintiffs' designation of the Supreme Court as the "court to which appeal is taken," we raised this issue *sua sponte* at oral argument. Notwithstanding the opportunity to do so, plaintiffs did not claim the error was a mere mistake in drafting, and, indeed, claimed their mistaken notice of appeal was sufficient to confer jurisdiction on this Court under Rule 3(d).

"[W]e may liberally construe a notice of appeal in one of two ways to determine whether it provides jurisdiction." *Von Ramm v. Von Ramm*, 99 N.C. App. 153, 156, 392 S.E.2d 422, 424 (1990). As *Von Ramm* explains:

> First, "a mistake in designating the judgment, or in designating the part appealed from if only a part is designated, should not result in loss of the appeal as long as the intent to appeal from a specific judgment can be *fairly inferred* from the notice and the appellee is not misled by the mistake." *Smith v. Independent Life Ins. Co.*, 43 N.C. App. 269, 274, 258 S.E.2d 864, 867 (1979), citing 9 *Moore's Federal Practice* § 203.17[2], 3-80—3-82 (2d ed. 1990) (footnotes omitted) (emphasis added). Second, if a party techni-cally fails to comply with procedural requirements in filing papers with the court, the court may determine that the party complied with the rule if the party accomplishes the *"functional equivalent"* of the requirement. *Torres*, at 317, 101 L.E.2d at 291 (overlooking a party's failure to comply with a federal notice of appeal requirement of designating the petitioner's name) (em-phasis added).

*Id.* at 156-57, 392 S.E.2d at 424. *Accord Foreman v. Sholl*, 113 N.C. App. 282, 291, 439 S.E.2d 169, 175 (1994) (notes Rule 3 is jurisdictional, but proceeds to quote *Von Ramm* and considers whether intent to appeal could be "fairly inferred" or if the party accomplished the "functional equivalent"); *Monin v. Peerless Ins. Co.*, 159 N.C. App. 334, 343-44, 583 S.E.2d 393, 399 (2003) (citing *Von Ramm* and analyzing whether it could be " 'fairly inferred' from the face of the notice of appeal that plaintiff intended to appeal from anything other than the judgment notwithstanding the verdict"), *disc. review denied*, 357 N.C. 506, 587 S.E.2d 670 (2003).

Mistakes by appellants in following all the subparts of Appellate Procedure Rule 3(d) have not always been fatal to an appeal. For example, Rule 3(d) requires the appellant to "designate the judgment or order from which appeal is taken." In *Strauss v. Hunt*, 140 N.C. App. 345, 350-51, 536 S.E.2d 636, 640 (2000), however, the appellant omitted an earlier trial court order and referred only to a later order in her notice of appeal, but the Court of Appeals found it could fairly infer her intent to appeal from the earlier order. "Although defendant referred only to the 11 June 1999 order in her notice of appeal, we conclude the notice fairly inferred her intent to appeal from the 21 April 1999 order, and did not mislead the plaintiff." *Id.* at 340, 536 S.E.2d at 640. Similarly, in *Evans v. Evans*, 169 N.C. App. 358, 363, 610 S.E.2d 264, 269 (2005), the defendant gave notice she appealed an order "denying Defendant's claim for child custody and child support," but omitted from the notice of appeal the post-separation support and divorce from bed and board. The Court of Appeals nevertheless found jurisdiction over the post-separation support and divorce from bed and board, concluding "it is readily apparent that defendant is appealing from the order dated 18 December 2001 which addresses not only child custody and support but also post-separation support and divorce from bed and board." *Id.*

Similarly, Rule 3(d) requires the notice of appeal to "specify the party or parties taking the appeal," but appellants' omissions of this requirement have not prevented our assuming jurisdiction on appeal. In *Hummer v. Pulley, Watson, King & Lischer, P.A.*, 140 N.C. App. 270, 277, 536 S.E.2d 349, 353-54 (2000), the trial court held defendants' counsel jointly and severally liable for various monetary penalties, although defendants' counsel had not been parties to the case. Defendants' counsel signed the notice of appeal, but failed to name themselves in the body of the notice of the appeal. We determined this error was a "procedural rather than a jurisdictional error," and

STEPHENSON v. BARTLETT

[177 N.C. App. 239 (2006)]

therefore "defendants' counsel achieved the functional equivalent of naming themselves as appellants in the notice of appeal." *Id.*

In the instant case, plaintiffs failed to specify the Court of Appeals as the "court to which appeal is taken," per Rule 3(d). Despite this failing, we find the intent to appeal to this Court can be fairly inferred from plaintiffs' notice of appeal and the notice achieved the functional equivalent of an appeal to this Court.[1] Indeed, defendants were not misled by plaintiffs' mistake, as they inferred from the notice that the appeal would proceed in this Court. Furthermore, we can find no reason to treat one subpart of Rule 3(d) differently from another subpart. As in *Strauss* and *Evans*, where we found jurisdiction despite mistakes in designating the correct judgment or order from which appeal is taken, the mistake here falls under the same subpart, indeed within the same semi-coloned section, of Rule 3(d). Accordingly, we assume jurisdiction to decide this appeal under the logic of *Von Ramm.*

**[2]** We turn now to the merits of plaintiffs' appeal. The trial court's ruling denied plaintiffs' request for attorney fees, declining to endorse plaintiffs' reliance on 42 U.S.C. § 1988, N.C. Gen. Stat. § 6-19.1 (2005), and the private attorney general doctrine.

Neither N.C. Gen. Stat. § 6-19.1 (2005) (permitting award of attorney fees to parties appealing or defending against *agency action*) (emphasis added) nor 42 U.S.C. § 1988 (permitting an award of attorney fees to a prevailing party in an action or proceeding to enforce certain enumerated federal statutes listed therein) authorize an award of attorney fees under the facts of the instant case. Plaintiffs candidly conceded to the trial court that no court has applied the statutes upon which they rely in this manner. We, like-

---

1. The United States Supreme Court allows circuit courts to liberally construe similar rules in federal appellate procedure. *See, e.g., Foman v. Davis,* 371 U.S. 178, 181-82, 9 L. E. 2d 222, 225-26 (1962) (reversing the court of appeals for rejecting an appeal because it "should have treated the appeal from the denial of the motions as an effective, although inept, attempt to appeal" and stating: " 'The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits' "); *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 316-17, 101 L. E. 2d 285, 291 (1988) ("We do not dispute the important principle for which *Foman* stands—that the requirements of the rules of procedure should be liberally construed and that 'mere technicalities' should not stand in the way of consideration of a case on its merits. *Ibid.* Thus, if a litigant files papers in a fashion that is technically at variance with the letter of a procedural rule, a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires.").

wise, decline to hold these statutory provisions applicable to the facts of the instant case.

The private attorney general doctrine is an equitable exception to the general American rule that each party bear its own attorney fees absent statutory or contractual authorization for a court to award the same. Under this doctrine, which serves as an incentive for the initiation of public interest litigation by a private party, a court may award attorney fees to a party vindicating a right that (1) benefits a large number of people, (2) requires private enforcement, and (3) is of societal importance. Ann K. Wooster, Annotation, *Private Attorney General Doctrine—State Cases*, 106 A.L.R.5th 523 (2003).

The large majority of our sister states that have considered the issue have declined to adopt the private attorney general doctrine. *See id. See, e.g., State Bd. of Tax Comm'rs v. Town of St. John*, 751 N.E.2d 657, 661 (Ind. 2001) ("Likewise, a number of states have rejected the private attorney general doctrine."); *Pearson v. Bd. of Health*, 525 N.E.2d 400, 402-03 (Mass. 1988) ("Most courts generally have determined that, absent a specific legislative directive, it is inappropriate to award attorneys' fees on a 'private attorney general' theory.") Frequently cited as the reason for declining to adopt the doctrine is that where the legislature has a policy of selecting special situations where attorney fees may be awarded, "it is inappropriate for the judiciary to establish under the private attorney general doctrine a broad rule permitting such fees whenever a private litigant has at substantial cost to himself succeeded in enforcing a significant social policy that may benefit others." *Doe v. Heintz*, 526 A.2d 1318, 1323 (Conn. 1987). *See also State Bd. of Tax Comm'rs*, 751 N.E.2d at 661-64 (rejecting adoption of the private attorney general doctrine where the Indiana General Assembly had created statutory exceptions to the American rule and had observed prudential considerations such as the possible attraction of "bounty hunters" in public interest litigation, as well as difficult and subjective determinations by courts as to whether private enforcement was necessary, whether the action was a burden, whether and in what amount a fee was appropriate, and whether a significant number of citizens benefitted irrespective of whether those citizens considered themselves benefitted).

Our own Supreme Court has unequivocally noted that "all costs are given in a court of law in virtue of some statute[,] [and the] simple but definitive statement of the rule is: [C]osts in this State are

entirely creatures of legislation, and without this they do not exist." *City of Charlotte v. McNeely*, 281 N.C. 684, 691, 190 S.E.2d 179, 185 (1972) (internal citations and quotation marks omitted). The Court further observed that "[i]n this jurisdiction, in the absence of express statutory authority, attorneys' fees are not allowable as part of the court costs in civil actions." *Id.* at 695, 190 S.E.2d at 187.

Notwithstanding this clear directive, plaintiffs direct the attention of this Court to *Bailey v. State of North Carolina*, 348 N.C. 130, 500 S.E.2d 54 (1998) and argue our Supreme Court's holding authorizes the award of attorney fees to the prevailing party in equitable actions to vindicate important constitutional rights for the benefit of many citizens. In *Bailey*, our Supreme Court struck down legislation that partially taxed state and local government retirement benefits on the grounds that it constituted (1) an unconstitutional impairment of the contractual relationship that included the tax exemption of benefits derived from the plaintiffs' retirement plans (348 N.C. at 153, 500 S.E.2d at 67), and (2) an unconstitutional taking of private property without just compensation (*id.* at 155, 500 S.E.2d at 69). In addition, the Court upheld the trial court's creation of a common fund for the payment of attorney fees and other costs incurred by the class representatives despite the fact that the common fund arose as a result of the litigation as opposed to litigation involving a preexisting fund of money. *Id.* at 159, 500 S.E.2d at 71. Defendants' reliance on *Bailey* is misplaced.

First, *Bailey* expressly reiterated the general rule that attorney fees "are ordinarily taxable as costs only when authorized by statute." *Id.* Notwithstanding, the Court further observed that the " 'common-fund doctrine' is a long-standing exception to the general rule in this country that every litigant is responsible for his or her own attorney's fees." *Id.* *Bailey's* adherence to a long-standing exception of the common fund doctrine has no application in this case, in which plaintiffs candidly concede, as they must, that there is no common fund resulting from the litigation. Second, *Bailey* involved a class action in which the attorney fees borne by the representatives of the class were then shared or equally distributed to the benefitted class by exaction out of the recovery of the litigation. *Id.* at 162, 500 S.E.2d at 72-73. By way of contrast, plaintiffs ask this Court to shift the burden of attorney fees to the State (and, by extension, to the taxpayers) instead of to a resulting fund from which those fees would be drawn.

PAGE v. LEXINGTON INS. CO.

[177 N.C. App. 246 (2006)]

Affirmed.

Judges WYNN and STEPHENS concur.