IN THE MATTER OF: K.N.

No. COA06-1288

(Filed 20 February 2007)

**Termination of Parental Rights— fundamental fairness—service—presence at hearing**

A termination of parental rights was vacated where there were questions of fundamental fairness raised by issues concerning service and a hearing which lasted only twenty minutes at which no counsel was present for the mother. Her arrival in the courtroom after the completion of the hearing does not constitute a waiver of notice.

Appeal by respondent-mother from a judgment entered 23 June 2006, *nunc pro tunc* 26 May 2006, by Judge Gary S. Cash in District Court, Buncombe County. Heard in the Court of Appeals 17 January 2007.

---

**IN RE K.N.**

[181 N.C. App. 736 (2007)]

*Buncombe County Department of Social Services, by Danya Ledford Vanhook, for petitioner-appellee.*

*Michael N. Tousey, for guardian ad litem Sharon Bares.*

*Thomas B. Kakassy, P.A., by Thomas B. Kakassy, for respondent-mother.*

WYNN, Judge.

"When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures,"[1] which in North Carolina has been achieved in part through statutory provisions that ensure a parent's right to counsel and right to adequate notice of such proceedings.[2] Here, we find that the proceedings below, culminating in the termination of Respondent-mother's parental rights as to the minor child K.N., failed to provide the procedures necessary to ensure fairness to the rights of Respondent-mother. We, therefore, vacate the order of termination.

On 28 December 2004, the Buncombe County Department of Social Services (DSS) filed a petition alleging that the minor child, K.N., was an abused and neglected child due to the negative effects of Respondent-mother's substance abuse. DSS assumed custody of K.N. by nonsecure custody order. On 18 March 2005, K.N. was adjudicated an abused and neglected child. On 18 October 2005, DSS filed a petition to terminate Respondent-mother's parental rights, alleging Respondent-mother had neglected K.N. pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) (2005).

A hearing was held on the petition to terminate Respondent-mother's parental rights on 26 May 2006. At the call of the case, Respondent-mother was not present, although a local lawyer who was in the courtroom was allowed to withdraw as Respondent-mother's attorney after telling the trial court that she had not heard from or had any response from Respondent-mother. Before the proceedings began, the DSS attorney stated his understanding that DSS had completed service on Respondent-mother but that no answer had been filed; the trial court also noted the lack of a responsive pleading or communication from Respondent-mother in the file.

The hearing then continued, consisting of the testimony of a single witness, the DSS case worker assigned to monitor K.N. The

---

1. *Santosky v. Kramer*, 455 U.S. 745, 753, 71 L. Ed. 2d 599, 606 (1982).

2. *See* N.C. Gen. Stat. § 7B-1101.1 (2005); N.C. Gen. Stat. § 7B-1106 (2005).

trial court concluded that grounds existed pursuant to N.C. Gen. Stat. § 1111(a)(1) to terminate Respondent-mother's parental rights, and that such termination was in K.N.'s best interest. A few moments after the conclusion of the approximately twenty-minute hearing, Respondent-mother entered the courtroom and learned that her parental rights had been terminated. She asked if she could appeal anything that day, and the trial court suggested she seek out the local lawyer who had earlier been allowed to withdraw from the hearing.

After Respondent-mother returned to the courtroom with the lawyer, the trial court clarified that the lawyer had not, in fact, been appointed as Respondent-mother's counsel for the termination hearing but had instead served only as her counsel in the underlying abuse and neglect adjudication proceeding. The trial court then reappointed the lawyer to serve as Respondent-mother's counsel and advise her as to the appeals process. He also asked Respondent-mother to provide the court with a valid address so she could receive a copy of the judgment when it was entered.

The judgment terminating Respondent-mother's parental rights as to K.N. was entered on 23 June 2006. She now appeals that judgment, arguing (I) the trial court erred in relieving Respondent-mother's attorney when the case was called for trial and then in conducting the trial when her attorney had just been discharged; (II) the trial court erred in conducting the hearing when Respondent-mother had not been properly noticed; and, (III) the trial court's judgment is void for lack of jurisdiction. Because we find the issue of notice to be determinative of the outcome in this case, we address only the second of these arguments, namely, that the record fails to show that Respondent-mother was properly noticed.

North Carolina General Statute § 7B-1106 provides that, "upon the filing of the [termination] petition, the court shall cause a summons to be issued. . . . [which] shall be directed to . . . [t]he parents of the juvenile . . . as provided under the procedures established by G.S. 1A-1, Rule 4(j)." That Rule outlines the proper procedures for service of process on individuals, including by delivering a copy of the summons to the individual herself, by leaving a copy with "some person of suitable age and discretion" residing at the individual's home, or by mailing a copy to the individual, using signature confirmation provided by the United States Postal Service. N.C. Gen. Stat. § 1A-1, Rule 4(j)(1) (2005). Proof of service is then shown by an affidavit filed by the serving party, as well as the return or delivery receipt or signature confirmation, which "raises a presumption that the

person who received the mail . . . was an agent of the addressee . . . or was a person of suitable age and discretion residing in the addressee's dwelling house." N.C. Gen. Stat. § 1A-1, Rule 4(j2) (2005).

Nevertheless, regardless of these technical requirements, a parent may waive the defenses of lack of personal jurisdiction or insufficiency of service of process by making a general appearance or by filing an answer, response, or motion without raising the defense. N.C. Gen. Stat. § 1A-1, Rule 12 (2005); *In re B.M.*, 168 N.C. App. 350, 355, 607 S.E.2d 698, 702 (2005) ("[A] party who is entitled to notice of a hearing waives that notice by attending the hearing of the motion and participating in it without objecting to lack thereof."); *In re J.W.J.*, 165 N.C. App. 696, 698-99, 599 S.E.2d 101, 102-03 (2004).

Here, Respondent-mother did not participate in this case in any meaningful way; indeed, her arrival at the courtroom after the conclusion of the hearing does not constitute a waiver of notice. Because the hearing had been completed, her failure to object to lack of notice or to raise the issue at that time has no bearing on the substance of her claims. We therefore turn to the question of whether Respondent-mother received proper notice of the termination proceedings.

The record before us shows that DSS mailed a summons to Respondent-mother at a post office box in Leicester, North Carolina, on 18 October 2005, notifying her about the petition to terminate her parental rights. However, the summons contains no information as to how DSS ensured that Respondent-mother received it. The record contains an additional summons, dated 27 October 2005, with a different address for Respondent-mother in Marshall, North Carolina, but again, there is no indication of how service was made. According to the trial court and DSS, Respondent-mother filed no answer or responsive pleading to either summons about the petition.

On 3 November 2005, DSS filed an affidavit of service, swearing that a copy of the summons and petition had been sent certified mail, return receipt requested, to Respondent-mother at the same Marshall, North Carolina address on 1 November 2005. A copy of the certified mail receipt was attached, signed by an individual named Hershel Jenkins. This name appears nowhere else in the record. DSS also provided certificates of service of notice of the first termination hearing, scheduled for 22 February 2006 and then postponed, and the one at issue in this case, scheduled for "the trial term of May 22nd, 2006." Both of these contained the Marshall, North Carolina address for Respondent-mother; additionally, both state that service was made by

**IN RE K.N.**

[181 N.C. App. 736 (2007)] ·

mailing a copy of the summons to "the attorney or attorneys for said parties." The specific date and time of the 26 May 2006 hearing was not included in that notice, but the DSS social worker testified at the hearing that she had spoken to Respondent-mother's brother and left a message with him for Respondent-mother as to when the hearing was scheduled.

In its brief to this Court, DSS contends that Respondent-mother's appearance at the hearing, albeit after its conclusion, shows that she had notice of its time and date and was simply tardy. We are not persuaded. Respondent-mother arrived after the conclusion of the hearing; the length of time after its conclusion is immaterial. Although true that the affidavit of service and signed return receipt of 1 November 2005 "raises a presumption that the person who received the mail . . . was an agent of the addressee . . . or was a person of suitable age and discretion residing in the addressee's dwelling house," N.C. Gen. Stat. § 1A-1, Rule 4(j2), we point in particular to the final phrase of this provision, namely, "residing in the addressee's dwelling house."

There is no evidence that the Marshall address where Hershel Jenkins signed for the summons was indeed Respondent-mother's dwelling house or that she had ever responded to any mail sent there. Indeed, when asked to provide her address to the trial court, she gave an address entirely different than that which DSS had been using for service of process. Moreover, according to the record, the two notices of the scheduled termination hearings were purportedly mailed to Respondent-mother's attorney, when the trial court stated on the record that, as of the hearing date, no attorney had in fact been appointed for her for the termination proceedings.

This Court has previously held that

> [A] defendant who seeks to rebut the presumption of regular service generally must present evidence that service of process failed to accomplish its goal of providing defendant with notice of the suit, rather than simply questioning the identity, role, or authority of the person who signed for delivery of the summons.

*Granville Med. Ctr. v. Tipton,* 160 N.C. App. 484, 493, 586 S.E.2d 791, 797 (2003). We find that the discrepancy between the address used by DSS and that given by Respondent-mother to the trial court, as well as Respondent-mother's failure to appear or respond in any way in the

**IN RE K.N.**

[181 N.C. App. 736 (2007)]

termination proceedings, serves to rebut the presumption of valid service, which is further weakened by the lack of information or evidence as to the identity of Hershel Jenkins. *Cf. In Re Estate of Cox,* 36 N.C. App. 582, 585, 244 S.E.2d 733, 735 (1978) (finding valid service when the mail was addressed to the defendant "in care of" the individual who signed the return receipt).

We note too the unique procedural posture of this case, in light of Respondent-mother's appearance in the courtroom after the conclusion of the hearing. Although this Court has previously found that a return receipt and a respondent's filed petition showed sufficient compliance to raise a rebuttable presumption of valid service, *see In re Williams,* 149 N.C. App. 951, 959, 563 S.E.2d 202, 206 (2002), nothing was filed by Respondent-mother in this case. Moreover, we held in *Williams* that the respondent had failed to rebut the presumption because he had not shown that he never received the summons and complaint. Here, however, because the hearing had already concluded by the time Respondent-mother arrived, she had no opportunity to present evidence or argument that she had not received the summons or petition. She has done so in her appeal, however, which was her first opportunity to argue lack of service of process.

We are reminded of the United States Supreme Court's caution that

> The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. . . . If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.

*Santosky v. Kramer,* 455 U.S. 745, 753-54, 71 L. Ed. 2d 599, 606 (1982); *see also In re Murphy,* 105 N.C. App. 651, 653, 414 S.E.2d 396, 397-98, *aff'd per curiam,* 332 N.C. 663, 422 S.E.2d 577 (1992).

In sum, we hold that the issues as to valid service, as well as a hearing lasting only twenty minutes with no counsel present for Respondent-mother, raise questions as to the fundamental fairness of the procedures that led to the termination of Respondent-mother's parental rights. Accordingly, we vacate the order of termination.

Vacated.

Chief Judge MARTIN and Judge McGEE concur.