IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-522

No. COA21-754

Filed 2 August 2022

Henderson County, Nos. 15 JT 26, 27

IN THE MATTER OF:

R.A.F., R.G.F.

Appeal by Respondent from order entered 15 July 2021 by Judge Mack Brittain in Henderson County District Court. Heard in the Court of Appeals 26 April 2022.

*F.B. Jackson and Associates Law Firm, PLLC by James L. Palmer, for Petitioners-Appellees.*

*Peter Wood, for Respondent-Appellant.*

WOOD, Judge.

¶ 1        Respondent-Mother ("Mother") appeals an order terminating her parental rights to her minor children, R.A.F. ("Ralph") and R.G.F. ("Reggie")[1]. On appeal, Mother argues that the trial court abused its discretion when it removed her court-appointed counsel without a proper inquiry under N.C. Gen. Stat § 7B-1108.1 and erred by not appointing a guardian ad litem ("GAL") on behalf of her minor children. After careful review of the record and consideration, we vacate the trial court's order and remand for a new hearing.

---

[1] We use pseudonyms to protect the children's identities and for ease of reading.

## I. Factual and Procedural Background

¶ 2        Mother and the children's father ("Father")[2] are the biological parents of Ralph and Reggie, who were born in July 2012 and November 2013, respectively. Since September 6, 2014, Ralph and Reggie have resided continuously with Petitioners ("Petitioners"), who are husband and wife and are step-maternal aunt and uncle to the children. Petitioners are also licensed foster parents. Following the Henderson County Department of Social Services ("DSS") taking custody of Ralph and Reggie pursuant to petitions filed alleging neglect, the trial court, on July 11, 2015, adjudicated both children to be neglected due to housing instability, income instability, and substance abuse by the parents. The children continued in foster care placement and remained with Petitioners. On October 5, 2015, Father was convicted of breaking into a motor vehicle, trespassing, and disturbing the peace and was incarcerated in South Carolina.

¶ 3        At a review and permanency planning hearing on March 9, 2017, the trial court detailed the status of the requirements Mother needed to complete as a prerequisite to regain custody or placement of her children, Ralph and Reggie. In order for reunification to occur, Mother was required to: (1) obtain a substance abuse assessment and complete all recommendations from this assessment; (2) submit to

---

[2] Father did not appeal the trial court's orders, and thus is not a party to this action.

random drug/alcohol screenings; (3) maintain a lifestyle free of controlled substances and alcohol; (4) demonstrate stable income sufficient to meet her family's basic needs; (5) obtain and maintain appropriate and safe housing; (6) not be involved with criminal activity; (7) pay child support; (8) cooperate with and ensure that her children have all medical, dental, developmental, and mental health evaluations and treatments; (9) provide the Social Worker with current contact information and ensure that if such information changes, the Social Worker is notified; and (10) maintain regular contact with her children, including "visiting with the juveniles as frequently as allowed by the Court and demonstrat[ing] the ability to provide appropriate care for the juveniles."

¶ 4    In reviewing these requirements for reunification, the trial court found that Mother had made some progress: she had completed her substance abuse classes; provided the social worker her current address; attended a child family team meeting in March 2017; assisted in scheduling doctor's appointments for her children; was employed full-time since September 2016; paid child support; attended all but three visits with her children; and acted appropriately during the visitations. However, there were several requirements Mother had not fulfilled. The trial court found Mother tested positive for marijuana intermittently during random drug screens conducted between 2015 and 2017; was convicted of possession of marijuana on both February 16, 2016 and April 18, 2016; and did not possess independent housing

because she lived with her mother and stepfather.

¶ 5        At this hearing, the trial court granted custody of Ralph and Reggie to Petitioners, terminated the juvenile proceedings, and initiated a civil custody action pursuant to N.C. Gen. Stat. § 7B-911.  The trial court found that Mother was "acting in a manner inconsistent with the health or safety of the juveniles," had not made adequate progress within a reasonable time as the children had been in DSS custody for twenty-one months, had not completed her reunification plan, and that the "compliance and actions of the [Mother and Father] are not sufficient to remedy the conditions which led to the juveniles' removal."

¶ 6        On April 3, 2017, the trial court entered a separate child custody order to initiate a civil action for custody.  This order granted Mother unsupervised visitation with her children every other weekend from Friday at 6 pm to Sunday at 5 pm.  Mother was also permitted phone calls with her children as mutually agreed upon with Petitioners.  The order granted Father one hour of supervised visitation per week upon his release from prison.

¶ 7        Four years later, on April 6, 2021, Petitioners filed petitions for the termination of Mother and Father's parental rights ("TPR").  Petitioners alleged that Mother had willfully neglected her children as she was unable to complete reunification requirements, did not exercise her visitation rights with her children, and did not provide proper care or supervision of her children.  Petitioners also

alleged that Mother had willfully abandoned her children for at least six months immediately preceding the filing of the petitions. On April 16, 2021, the Henderson County sheriff personally served Mother with the TPR petitions and summonses. On May 12, 2021, Father was served with the TPR summonses and petitions while in custody.

¶ 8          Mother was assigned Ms. Walker as her provisional court-appointed attorney at the time of the filing of the petitions. Mother called Ms. Walker and informed her she wanted to contest the TPR petitions. Ms. Walker filed separate motions for Extension of Time on May 4, 2021 (in 15J27) and on May 7, 2021 (in 15J26). Both motions were granted by the trial court and allowed Mother to file an answer or response to the respective petitions on or by June 9, 2021. Mother did not file an answer or other responsive pleading in either case.

¶ 9          On June 23, 2021, Petitioners filed a Notice of Hearing scheduling a hearing on the TPR petitions for July 15, 2021. A week before the TPR hearing, Mother sent a card to her children in which she wrote that "she was trying her best to get better, and to be better, and that she loved and missed them very much." The envelope listed a return address in Abbyville, South Carolina that was unknown to Petitioners.

¶ 10          Neither Mother nor Father appeared in court at the July 15, 2021 TPR hearing. The trial court conducted a pretrial hearing with Mother's provisional court-appointed attorney present. The trial court asked Ms. Walker if she had been in

contact with Mother. Ms. Walker informed the trial court that Mother had contacted her when she was served. Ms. Walker explained that although Mother did not appear for her scheduled office appointment, she had contacted the office to "say she was in a treatment facility" for substance abuse. Ms. Walker further recounted that she spoke with the treatment facility and learned Mother had successfully graduated from the program, but Mother had not been in contact with her since. Ms. Walker stated that she had last heard from Mother in April 2021. Thereafter, the trial court, on its own motion, released Ms. Walker from representing Mother in the termination action. In the TPR Order, the trial court found that "[t]he provisionally appointed attorneys for [Mother and Father] should be released, despite efforts by the respective attorneys to engage the Respondent parents in the participation of this proceeding."

¶ 11        During the pretrial hearing, the trial court found that all service and notice requirements had been met for Mother and Father. The trial court noted that "the appointment of a Guardian Ad Litem for the child[ren] was not needed or required as neither [Parent] has sought to contest the [TPR] Petition[s]." The court also stated that "there are no issues or pre-trial motions raised by any party" and "no responsive pleading has been submitted by [Mother] (although the court notes that a Motion and Order for extension of time in regards [sic] to the [Mother] appears in the court file[s])."

¶ 12        After the pretrial hearing, the trial court proceeded with the adjudication and

disposition stages of the TPR hearing. The trial court heard testimony from one witness, Petitioner wife. Petitioner wife testified the children had lived with her and her husband since September 2014; the children were adjudicated neglected based upon Mother's housing instability, income instability, and substance abuse in 2015; and Mother had not exercised visitations with her children since July 2019. Petitioner wife also testified that Mother does not provide support for her children; is not involved in their education, extracurricular activities, or medical appointments; and had not shown any progress in correcting the conditions that led to her children's removal from her custody. Petitioner wife acknowledged that Mother sent a card to her children that arrived sometime earlier in July.

¶ 13    After this testimony, the court found by clear and convincing evidence that grounds existed to terminate Mother's parental rights based on willful neglect and willful abandonment because: Mother has not exercised her visitation rights with her children, has failed to follow through with telephone calls or visitation with her children, and has not offered any support for her children since July 2019. At the dispositional portion of the TPR hearing, the trial court determined that: (1) a strong bond exists between Petitioners, Reggie, and Ralph; (2) the likelihood Petitioners will adopt the children is high; and (3) it is in the best interests of the children to terminate Mother and Father's parental rights. On July 15, 2021, the trial court entered orders terminating Mother's parental rights to Reggie and Ralph. Mother

filed a written notice of appeal on August 13, 2021.

## II.    Appellate Jurisdiction

¶ 14        We note Mother's written notice of appeal was addressed to the "Honorable North Carolina Supreme Court" instead of to this Court. The record before us does not contain a notice of appeal to the North Carolina Court of Appeals. Rule 3(d) of our Rules of Appellate Procedure governs the content of a notice of appeal and provides: "[t]he notice of appeal . . . shall designate the judgment or order from which appeal is taken and the court to which appeal is taken." N.C. R. App. P. 3(d). "In order to confer jurisdiction on the state's appellate courts, appellants of lower court orders must comply with the requirements of Rule 3 of the North Carolina Rules of Appellate Procedure" and "failure to follow the requirements thereof requires dismissal of an appeal." *Phelps Staffing, LLC v. S.C. Phelps, Inc.*, 217 N.C. App. 403, 410, 720 S.E.2d 785, 790-91 (2011) (first quoting *Bailey v. State*, 353 N.C. 142, 156, 540 S.E.2d 313, 322 (2000); then quoting *Abels v. Renfro Corp.*, 126 N.C. App. 800, 802, 486 S.E.2d 735, 737 (1997)). Here, Mother failed to specify the Court of Appeals as the "court to which appeal is taken," per Rule 3(d). Notwithstanding, this court has previously held that "[m]istakes by appellants in following all the subparts of Appellate Procedure Rule 3(d) have not always been fatal to an appeal." *Stephenson v. Bartlett*, 177 N.C. App. 239, 242, 628 S.E.2d 442, 444 (2006). In *Stephenson,* we liberally construed the requirements of Rule 3(d) and permitted a plaintiff to proceed

with an appeal to this Court, despite designating the North Carolina Supreme Court in its notice of appeal. *Id.* at 243, 628 S.E.2d at 444-45. We held that the plaintiffs' appeal to this Court could be "fairly inferred from plaintiffs' notice of appeal" so that the "notice achieved the functional equivalent of an appeal to this Court" and the defendants were not misled by the plaintiffs' mistake. *Id.* at 243, 628 S.E.2d at 444.

¶ 15    In the instant case, we can reasonably infer from which court Mother has sought relief from the timely filing of her Record on Appeal and her brief with this Court. Petitioners were not prejudiced by Mother's mistake and could reasonably infer Mother's intent as they, too, timely filed their brief with this Court. Therefore, Mother's mistake in failing to specify this Court in her appeal does not warrant dismissal of her appeal.

¶ 16    Additionally, this Court possesses the authority "pursuant to North Carolina Rules of Appellate Procedure 21(a)(1) to 'treat the purported appeal as a petition for writ of certiorari' and grant it in our discretion." *Luther v. Seawell*, 191 N.C. App. 139, 142, 662 S.E.2d 1, 3 (2009) (quoting *State v. SanMiguel*, 74 N.C. App. 276, 277-78, 328 S.E.2d 326, 328 (1985)). We elect to do so here and review Mother's claims on their merits. *See Anderson v. Hollifield*, 345 N.C. 480, 484, 480 S.E.2d 661, 664 (1997).

## III.    Discussion

¶ 17    On appeal, Mother first argues the trial court erred by releasing Mother's

provisional court-appointed attorney on its own motion without conducting an inquiry into counsel's efforts to reach Mother pursuant to N.C. Gen. Stat. § 7B-1108.1. Second, Mother contends the trial court erred by not appointing a GAL for the children under N.C. Gen. Stat. § 7B-1108(b). Because we hold the issue of the trial court's releasing Mother's provisional court-appointed attorney without inquiring into counsel's attempts to communicate with Mother and whether Mother was given notice of the pre-trial and termination hearings to be dispositive of the outcome in this case, we need not address Mother's second argument.

## A. Fundamentally Fair Procedures

¶ 18   Under North Carolina law, "[w]hen the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures, with the existence of such procedures being an inherent part of the State's efforts to protect the best interests of the affected children by preventing unnecessary interference with the parent-child relationship." *In re K.M.W.*, 376 N.C. 195, 208, 851 S.E.2d 849, 859 (2020) (quoting *In re Murphy*, 105 N.C. App. 651, 653, 414 S.E.2d 396, 397-98, *aff'd per curiam*, 332 N.C. 663, 422 S.E.2d 577 (1992)). In TPR proceedings, parents are entitled to procedural safeguards which provide fundamental fairness, ensuring "a parent's right to counsel and right to adequate notice of such proceedings." *In re K.N.*, 181 N.C. App. 736, 737, 640 S.E.2d 813, 814 (2007); *see* N.C. Gen. Stat. §§ 7B-1101.1, 7B-1106 (2021). In fact, this court has "consistently vacated

or remanded TPR orders when questions of 'fundamental fairness' have arisen due to failures to follow [such] basic procedural safeguards." *In re M.G.*, 239 N.C. App. 77, 83, 767 S.E.2d 436, 441 (2015) (citation omitted).

¶ 19    In order to adequately "protect a parent's due process rights in a termination of parental rights proceeding, the General Assembly has created a statutory right to counsel for parents involved in termination proceedings" and a statutory right for parents to be given notice of the termination hearing. *In re K.M.W.*, 376 N.C. 195, 208, 851 S.E.2d 849, 859 (2020); N.C. Gen. Stat. § 7B-1106(a)(1); *In re A.D.S.,* 264 N.C. App. 637, 824 S.E.2d 926, 2019 N.C. App. LEXIS 283 at *10 (2019) (unpublished). Additionally, a parent in a TPR proceeding "has the right to counsel, and to appointed counsel in cases of indigency, unless the parent waives the right." N.C. Gen. Stat. § 7B-1101.1(a) (2021); *In re L.C.,* 181 N.C. App. 278, 282, 638 S.E.2d 638, 641 (2007) ("Parents have a right to counsel in all proceedings dedicated to the termination of parental rights." (cleaned up)). This Court has stated that, "after making an appearance in a particular case, an attorney may not cease representing a client without '(1) justifiable cause, (2) reasonable notice [to the client], and (3) the permission of the court.' " *In re M.G.*, 239 N.C. App. 77, 83, 767 S.E.2d 436, 440 (alteration in original) (quoting *Smith v. Bryant*, 264 N.C. 208, 211, 141 S.E.2d 303, 305 (1965)).

¶ 20    "The determination of counsel's motion to withdraw is within the discretion of

the trial court, and thus we can reverse the trial court's decision only for abuse of discretion." *Benton v. Mintz*, 97 N.C. App. 583, 587, 389 S.E.2d 410, 412 (1990) (citation omitted). However, "this general rule presupposes that an attorney's withdrawal has been properly investigated and authorized by the court," so that "[w]here an attorney has given his client no prior notice of an intent to withdraw, the trial judge has no discretion" and "must grant the party affected a reasonable continuance or deny the attorney's motion for withdrawal." *Williams and Michael v. Kennamer*, 71 N.C. App. 215, 217, 321 S.E.2d 514, 516 (1984). Therefore, before the trial court allows an attorney to withdraw or relieves an attorney "from any obligation to actively participate in a termination of parental rights proceeding when the parent is absent from a hearing, the trial court must inquire into the efforts made by counsel to contact the parent in order to ensure that the parent's rights are adequately protected." *In re D.E.G.*, 228 N.C. App. 381, 386-87, 747 S.E.2d 280, 284 (2013) (citing *In re S.N.W.*, 204 N.C. App. 556, 561, 698 S.E.2d 76, 79 (2010)).

¶ 21     The record presented for our review demonstrates that Mother was personally served with the TPR petitions and summonses on April 16, 2021 and was assigned Ms. Walker as her court-appointed attorney. After receiving the TPR petitions, Mother informed her attorney that she wanted to contest them. Subsequently, Ms. Walker filed separate motions for Extension of Time on May 4, 2021 (in 15J27) and on May 7, 2021 (in 15J26), which were granted by the trial court. Although Mother

did not file an answer or other responsive pleading in either case, the record shows that on June 23, 2021, Petitioners' attorney sent notice of the pretrial hearing and TPR hearing scheduled for July 15, 2021, to Father's provisional attorney, Father, and Mother's provisional attorney, but did not send notice to Mother at her address on file. We can deduce from the record before us that Petitioners' attorney presumed Mother's counsel made an appearance in this case by her filing motions for extensions of time. This presumption provides a possible explanation for why Petitioners' attorney did not serve Mother with notice of the TPR hearing.

¶ 22        Section 7B-1101.1 requires that "[a]t the first hearing after service upon the respondent parent, the court shall dismiss the provisional counsel if the respondent parent: [d]oes not appear at the hearing." N.C. Gen. Stat. § 7B-1101.1(a)(1). This statute presumes that the respondent parent has been given notice of the hearing and, therefore, an opportunity to decide whether to participate in the proceedings. Section 7B-1108.1 details an additional procedure to ensure a parent the fundamental fairness for TPR proceedings: the trial court is required to conduct a pretrial hearing, which may be combined with the adjudicatory hearing on termination. N.C. Gen. Stat. § 7B-1108.1 (2021). At this pretrial hearing, the court is required to "consider the . . . [r]etention or release of provisional counsel," and "[w]hether all summons, service of process, and notice requirements have been met." N.C. Gen. Stat. § 7B-1108.1(a)(1),(3). It is undisputed that Mother did not appear at

the July 15, 2021 TPR hearing. However, before relieving Mother's attorney from any obligation to participate in the TPR hearing, the trial court was required to "inquire into the efforts made by counsel to contact [Mother] in order to ensure that the parent's rights are adequately protected." *In re D.E.G.*, 228 N.C. App. at 386-87, 747 S.E.2d at 284.

¶ 23    Here, during the pretrial hearing, the trial court's inquiry consisted solely of asking Mother's attorney, "Ms. Walker, any contact from your client, ma'am?" Ms. Walker reported that Mother made initial contact after service; scheduled an appointment to meet but missed the appointment; and contacted Ms. Walker's office to report she was in a substance abuse treatment facility. Ms. Walker further reported that she had contacted the facility and learned Mother had successfully graduated from the treatment program. At the time of the hearing, Mother had not contacted Ms. Walker since graduating from the treatment program, so that it had been "probably April" since Ms. Walker had heard from Mother.

¶ 24    The record also establishes that the trial court made no inquiries concerning whether Mother had notice of the present TPR hearing as required by section 7B-1108.1(a)(3). A careful review of the record shows the TPR summons was served upon Mother on April 16, 2021, and the July 15 hearing was the first hearing following service of the TPR summonses and petitions on Mother. Notice of the July 15 hearing was filed on June 23, 2021 and was sent to Mother's provisional attorney, Father, and

Father's provisional attorney by Petitioners. While it is undisputed Mother did not appear at the hearing, there is no evidence in the record that Mother *knew* about the hearing. In fact, Mother's appellate attorney points out in her brief that "[i]t is unclear if [Mother] understood what time court started." The record shows Petitioners did not mail notice of the hearing to Mother, and notably, the trial court did not inquire whether Mother's provisional attorney had mailed a copy of the TPR notice of hearing to Mother's address of record.

¶ 25        Upon hearing Ms. Walker's report that it had "been probably April" since she heard from her client, the trial court should have inquired about what efforts Ms. Walker had made to contact Mother and whether Mother was sent notice of the pretrial and TPR hearing by her counsel. The trial court made no extended inquiry of Ms. Walker regarding whether Mother "understood what time court started[,]" whether Ms. Walker had a phone number for Mother, or if Ms. Walker attempted to reach her that day to notify her of the TPR hearing. Thus, there is no indication in the record that Mother learned about the termination hearing from either her attorney or by receipt of a notice of hearing. Although the trial court determined all service and notice requirements had been met and that Mother's provisional attorney should be released, "despite efforts by the respective attorney[] to engage [Mother] in the participation of this proceeding[,]" we hold the trial court erred as these findings were not supported by competent evidence.

¶ 26    We take issue with the dissent's contention that, "[a]s such, even if the purported appeal is properly before this Court, the burden is and remains on Mother to show both the trial court committed reversible error and prejudice she did not invite nor brought about the reasons to forfeit her parental rights.  This she has not and cannot do."  Our Supreme Court stated in *In re K.M.W.,* "we decline to adopt the . . . suggestion that we require a showing of prejudice as a prerequisite for obtaining an award of appellate relief in cases involving the erroneous deprivation of the right to counsel . . . in termination of parental rights proceedings."  376 N.C. at 213, 851 S.E.2d at 862 (citations omitted).  This is because "[a]side from the fact that the effect of such a deprivation upon a parent involved in a termination proceeding can be quite significant, it is simply impossible for a reviewing court to know what difference the availability of counsel might have made in any particular termination proceeding."  *Id*. at 213-14, 851 S.E.2d at 862-63.  Therefore, Mother is not required to demonstrate prejudice in order to obtain appellate relief based upon a violation of her right to counsel.

¶ 27    We again note that Mother had "no opportunity to present evidence or argument" that she had not received notice of the TPR hearing because she was absent from the hearing and the trial court released Mother's provisional counsel, without adequately inquiring into counsel's efforts to contact Mother regarding the termination hearing date, so that no counsel was present for Mother during the TPR

hearing. *In re K.N.,* 181 N.C. App. at 741, 640 S.E.2d at 817. While a parent may waive the right to counsel by non-participation in the termination proceeding, "the record before us raises questions as to whether [Mother] was afforded with the proper procedures to ensure that [her] rights were protected during the termination of [her] parental rights to the minor children." *In re S.N.W.*, 204 N.C. App. at 561, 698 S.E.2d at 79. Because of the trial court's lack of inquiry concerning whether Mother knew about the termination hearing and the efforts made by counsel to communicate with Mother, the trial court committed reversible error by not ensuring that Mother's substantial rights to counsel and to adequate notice of such proceedings were protected. *In re D.E.G.*, 228 N.C. App. at 386-87, 747 S.E.2d at 284; *In re K.N.*, 181 N.C. App. at 737, 640 S.E.2d at 814. Accordingly, we vacate and remand for a new hearing.

## IV.     Conclusion

¶ 28          For the reasons stated above, we conclude that the failure of the trial court to adequately inquire into Mother's provision court-appointed attorney's efforts to contact Mother about the TPR hearing "raise questions as to the fundamental fairness of the procedures that led to the termination of [Mother's] parental rights." *In re K.N.,* 181 N.C. App. at 741, 640 S.E.2d at 817. Therefore, we vacate the order terminating Mother's parental rights to her children and remand for a new hearing.

VACATED AND REMANDED.

Judge INMAN concurs by separate opinion.

Judge TYSON dissents by separate opinion.

No. COA21-754 – *In re: R.A.F., R.G.F.*

INMAN, Judge, concurring in the result.

I concur in the majority opinion that the notice of appeal in this matter was not fatally defective because this Court and Appellee could reasonably infer to which court Mother intended to appeal. I also concur in the decision to vacate the trial court's order relieving provisional counsel and terminating Mother's parental rights strictly because the trial court did not make adequate inquiry of counsel's efforts to notify Mother of the continued hearing date. I write separately to note that this case exemplifies the tension between a parent's right to due process and the best interest of a child who has been living with foster parents for more than four years. I do not take lightly the limbo in which children and foster parents are placed in order to protect the rights of parents whose children have for years been adjudicated abused, neglected, and/or dependent. *See In re R.T.W.*, 359 N.C. 539, 544, 614 S.E.2d 489, 492-93 (2005) (recognizing that the General Assembly crafted our abuse, neglect, and dependency statutes to mediate the "potential tension between parental rights and child welfare"), *superseded by statute on other grounds as recognized by In re A.S.M.R.*, 375 N.C. 539, 542, 850 S.E.2d 319, 321 (2020).

TYSON, Judge, dissenting.

¶ 30        We all agree Mother's appeal is not properly before this Court and is subject to dismissal.  N.C. R. App. P. 3(d) ("The notice of appeal . . . shall designate the judgment or order from which appeal is taken and the court to which appeal is taken[.]").  Several binding precedents clearly state: "In order to confer jurisdiction on the state's appellate courts, appellants of lower court orders must comply with the requirements of Rule 3 of the North Carolina Rules of Appellate Procedure" and "failure to follow the requirements thereof requires dismissal of an appeal."  *Phelps Staffing, LLC v. S.C. Phelps, Inc.*, 217 N.C. App. 403, 410, 720 S.E.2d 785, 790-791 (2011) (quoting *Bailey v. State*, 353 N.C. 142, 156, 540 S.E.2d 313, 322 (2000)); *see also Abels v. Renfro Corp.*, 126 N.C. App. 800, 802, 486 S.E.2d 735, 737 (1997).

¶ 31        No Petition for Writ of Certiorari is pending before this Court.  *See* N.C. R. App. P. 21. The majority's opinion asserts the defective notice of appeal together with Mother's arguments in her brief is a *de facto* Petition and "in our discretion" decides to "treat the purported appeal as a petition for writ of certiorari" and address the merits, citing N.C. R. App. P. 21(a)(1).  As such, even if the purported appeal is properly before this Court, the burden is and remains on Mother to show both the trial court committed reversible error and prejudice and she did not invite nor brought about the reasons to forfeit her parental rights.  This she has not and cannot do. It is not the role of this Court to create an appeal for appellant.

¶ 32        The majority's opinion "takes issue" with this longstanding precedent citing *In*

*re K.M.W.*, 376 N.C. 376 N.C. 195, 208, 851 S.E.2d 849, 859 (2020). *In re K.M.W.* is a wholly inapposite opinion regarding a parent present at a TPR proceeding being required to proceed pro-se by the trial court. *Id.* *In re K.M.W.* involves an appeal of right to our Supreme Court, and was based on an objection preserved for appellate review by operation of law. When the mother appeared, without an attorney, and the trial court did not conduct a colloquy, our Supreme Court held this was reversible error. *Id.* at 215, 851 S.E.2d at 863. Here, Mother never appeared despite being personally served of the proceedings and communications with her counsel. The majority reviews Mother's arguments on a purported PWC. Nothing in the reasoning or holding of *In re K.M.W.* absolves Mother or this Court from long established requirements to grant a PWC or to shift or reduce her burdens on appeal. I respectfully dissent.

## I. Jurisdiction

¶ 33        It is axiomatic that if an appellant has not properly given a notice of appeal, this Court is without jurisdiction to hear the appeal. *See State v. McMillian*, 101 N.C. App. 425, 427, 399 S.E.2d 410, 411 (1991). Rule 27(c) of the Rules of Appellate Procedure prohibits this Court from granting defendant an extension of time to file a notice of appeal since compliance with the requirements of Rules 3 and 4(a)(2) are jurisdictional and cannot simply be ignored by this Court. *See O'Neill v. Bank*, 40 N.C. App. 227, 230, 252 S.E.2d 231, 233-34 (1979).

¶ 34        "The writ of *certiorari* may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action[.]"  N.C. R. App. P. 21(a).  Our Appellate Rules specify the contents of a petition for a writ of certiorari:

> The petition shall contain a statement of the facts necessary to an understanding of the issues presented by the application; a statement of the reasons why the writ should issue; and certified copies of the judgment, order or opinion or parts of the record which may be essential to an understanding of the matters set forth in the petition.  The petition shall be verified by counsel or the petitioner.  Upon receipt of the prescribed docket fee, the clerk will docket the petition.

N.C. R. App. P 21(c).

¶ 35        Our Supreme Court recently reaffirmed the basis and rules for a Court to exercise its discretion to issue a writ of certiorari in *State v. Ricks*: "[T]he petition must show merit or that error was probably committed below. . . . A writ of certiorari is not intended as a substitute for a notice of appeal because such a practice would render meaningless the rules governing the time and manner of noticing appeals." *State v. Ricks*, 378 N.C. 737, 741, 2021-NCSC-116, ¶6, 862 S.E.2d 835, 839 (2021) (internal citations and quotation marks omitted).

¶ 36        The admittedly faulty notice of appeal and the contents of Mother's brief clearly do not meet the requirements set forth in Rule 21(c).  "The North Carolina

Rules of Appellate Procedure are mandatory and 'failure to follow these rules will subject an appeal to dismissal.'" *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 401, 610 S.E.2d 360, 360 (2005). In order the correct the deficiencies in Mother's purported petition for writ of certiorari, the majority must also invoke the provisions of Rule 2 of the Rules of Appellate Procedure, which it fails to do. N.C. R. App. P 2.

¶ 37 The authority to invoke Rule 2 and Rule 21 are discretionary. *See State v. McCoy*, 171 N.C. App. 636, 639, 615 S.E.2d 319, 321 (2005) (citations omitted). Mother's arguments do not show "merit or that error was probably committed below." *State v. Grundler*, 251 N.C. 177, 189, 111 S.E.2d 1, 9 (1959) (citation omitted). The plurality should decline "to take *two* extradentary steps" to exercise its discretion to correct *post hoc* defects in a notice of appeal, use Mother's brief as the purported petition for writ of certiorari, to allow it, and fails to invoke Rule 2 to review the merits. *State v. Bishop*, 255 N.C. App. 767, 768, 805 S.E.2d 367, 369 (2017); *see Ricks*, 378 N.C. at 741, 2021-NCSC-116, ¶6, 862 S.E.2d at 839. "It is not the role of the appellate courts . . . to create an appeal for an appellant. . . . [T]he Rules of Appellate Procedure must be consistently applied; otherwise, the Rules become meaningless, and an appellee is left without notice of the basis upon which an appellate court might rule." *Viar*, 359 N.C at 402, 610 S.E.2d at 361.

## II.  Background

¶ 38 Ralph and Reggie were born in July 2012 and November 2013, respectively,

and are now ten and eight years old. Ralph and Reggie have resided continuously with Petitioners since 6 September 2014. Petitioners are husband and wife, licensed foster parents, and are step-maternal aunt and uncle to the children.

¶ 39 On 11 July 2015 the trial court adjudicated both children as neglected due to housing instability, income instability, and substance abuse by both parents. After nearly six years, on 5 April 2021, Petitioners filed petitions to terminate Mother's parental rights. The Petitions alleged Mother: (1) had willfully neglected her children; (2) failed to complete reunification requirements; (3) did not exercise her visitation rights; (4) did not provide proper care or supervision; and, (5) had willfully abandoned her children for at least six months immediately prior to the filing of the Petitions.

¶ 40 On 16 April 2021, the Henderson County Sheriff personally served Mother with the TPR petitions and summonses. Ms. Walker had been appointed as Mother's provisional court-appointed attorney at the time of the filing of the Petitions. Mother knew of her appointed counsel and called Ms. Walker to contest the TPR petitions. Mother's provisional attorney timely filed separate motions for an Extension of Time to Answer on 4 May 2021 and on 7 May 2021. Both motions were granted by the trial court and allowed Mother to file an answer or response to the respective petitions on or by 9 June 2021. Despite this grace, Mother did not provide or file answers nor other responsive pleading to contest either Petition, with which she had been served.

On 23 June 2021, Petitioners filed a Notice of Hearing scheduling a hearing on the TPR petitions for 15 July 2021. Mother's provisional court-appointed attorney was present in court. Mother failed to appear in court at the 15 July 2021 TPR hearing. The trial court asked Ms. Walker in open court whether she had contact with Mother.

Ms. Walker responded Mother had contacted her when she was personally served with the Petitions and Summons. Mother failed to appear for her scheduled office appointment, but had again contacted her office to "say she was in a treatment facility" for substance abuse. Ms. Walker contacted and spoke with the treatment facility Mother had provided and learned Mother had successfully graduated from the program. Ms. Walker stated she had last heard from Mother in April 2021. Mother did not inform counsel of her whereabouts after being discharged from treatment. This was her choice.

A week before the TPR hearing, Mother sent a card to her children at Petitioner's address in which she wrote that "she was trying her best to get better, and to be better, and that she loved and missed them very much." The envelope listed a return address in Abbyville, South Carolina that was previously unknown to either Petitioners or counsel.

During the pretrial hearing, the trial court found that all service and notice requirements had been met. The court noted that "the appointment of a Guardian

Ad Litem for the child[ren] was not needed or required as neither Respondent has sought to contest the [TPR] Petition[s]." The court also stated "there are no issues or pre-trial motions raised by any party" and "no responsive pleading has been submitted by Mother (although the court notes that a Motion and Order for extension of time in regards [sic] to the Respondent Mother appears in the court file[s])."

¶ 45 The trial court, on its own motion and in its discretion, released Ms. Walker from continuing to represent Mother in the termination action. In the TPR Order, the trial court found that "[t]he provisionally appointed attorney[] for [Mother] should be released, despite efforts by . . . attorney[] to engage [Mother] in the participation of this proceeding." These findings are not challenged and are binding upon appeal.

¶ 46 After the pretrial hearing, the court proceeded with the adjudication and disposition stages of the TPR hearing. The court heard testimony from Petitioner wife. She testified both children had lived with her and her husband since September 2014; the children were adjudicated neglected based upon Mother's housing instability, income instability, and substance abuse in 2015; and, Mother had not exercised any visitations with her children since July 2019.

¶ 47 Petitioner wife also testified, and the trial court found, Mother had failed to provide support for her children, is not involved in their education, extracurricular activities, or medical appointments, and failed to make progress in correcting the conditions that led to her children's removal from her custody. Petitioner wife

acknowledged Mother had sent the card noted above to children, which had arrived a week earlier.

After this testimony, the court found grounds existed to terminate Mother's parental rights based on willful neglect and willful abandonment by clear and convincing evidence because: Mother has not exercised her visitation rights with her children for years, has failed to follow through with telephone calls or visitation with her children, and has not offered any support for her children since July 2019.

At the dispositional "best interests" portion of the TPR hearing, the trial court determined: (1) a strong bond exists between Petitioners and Reggie and Ralph; (2) the likelihood Petitioners will adopt the children is high; and, (3) it is in the best interests of the children to terminate Mother's parental rights. On 15 July 2021, the trial court entered orders terminating Mother's parental rights to Reggie and Ralph. Mother filed written notice of appeal to the Supreme Court on 13 August 2021.

### III. Standard of Review

"The determination of counsel's motion to withdraw is within the discretion of the trial court, and thus we can reverse the trial court's decision only for abuse of discretion." *Benton v. Mintz*, 97 N.C. App. 583, 587, 389 S.E.2d 410, 412 (1990) (citation omitted). The trial court's "best interests" determination is also reviewed for abuse of discretion. *See In re Anderson*, 151 N.C. App. 94, 98, 564 S.E.2d 599, 02 (2002).

## IV. Analysis

Mother was personally served with the TPR petitions and summonses on 16 April 2021 and was aware of appointment of Ms. Walker as her court-appointed attorney. After receiving the petitions, Mother informed Ms. Walker that she wanted to contest the TPR petitions. Ms. Walker scheduled an office appointment, which Mother failed to keep. Ms. Walker filed separate Extension of Time motions for each child on 4 May 2021 and on 7 May 2021, which were granted by the trial court. Mother failed to contact her appointed counsel to file an answer or other responsive pleading in either case. Petitioner's attorney sent notice of the pretrial hearing and TPR hearing on 23 June 2021, scheduled for 15 July 2021, to Ms. Walker who had made an appearance of record in this case by filing motions for an Extension of Time. The plurality opinion correctly notes, "after making an appearance in a particular case, an attorney may not cease representing a client without '(1) justifiable cause, (2) reasonable notice [to the client], and (3) the permission of the court.'" *In re M.G.*, 239 N.C. App. at 83, 767 S.E.2d at 440 (quoting *Smith v. Bryant*, 264 N.C. 208, 211, 141 S.E.2d 303, 305 (1965)).

A client who fails to keep appointments, does not maintain contact and appraise counsel of means and an address to contact them and absents and secrets themselves is a "justifiable cause" to "cease representing a client." *Id.* There is no dispute Ms. Walker ably and zealously represented Mother within the conduct and

constraints Mother imposed and she used reasonable investigations to seek and make contact with Mother. Ms. Walker appeared and was present at the hearing. Her continued representation was ceased with "the permission of the court." *Id.*

¶ 53 At this pretrial hearing, the court is statutorily required to "consider the . . . [r]etention or release of provisional counsel," and "[w]hether all summons, service of process, and notice requirements have been met." N.C. Gen. Stat. §7B-1108.1 (a)(1), (3) (2021). N.C. Gen. Stat. § 7B-1101.1(a)(1) also requires: "At the first hearing *after service* upon the respondent parent, the court *shall dismiss* the provisional counsel if the respondent parent: [d]oes not appear at the hearing." N.C. Gen. Stat. § 7B-1101.1(a)(1) (emphasis supplied). The trial court found and concluded all service and notice requirements had been met and that Mother's provisional attorney should be released, "despite efforts by the respective attorney[] to engage the Mother . . . in the participation of this proceeding." This finding and conclusion is unchallenged and is binding on appeal.

¶ 54 The issue becomes whether Mother has argued and shown an abuse of discretion and reversible error in the trial court's decision. *Benton*, 97 N.C. App. at 587, 389 S.E.2d at 412. To grant Mother a further extension or a continuance or not also rests within the trial court's discretion. Whether another trial judge could have or even would have reached a different conclusion is not the issue. There is no burden on appeal resting on the Petitioner-appellee or the trial judge. It is solely on the

Mother, who is before this Court only by discretionary grace, with no preserved challenges to the trial court's findings or conclusions. *Id.*

## V. Conclusion

¶ 55 While a whole panoply of rights and protections for a parent are rightly preserved in the Constitutions and statutes and are available in the trough, you cannot force a recalcitrant and absent parent to partake and drink. As Judge Inman's concurrence correctly notes, courts cannot take "lightly the limbo in which children and foster parents are placed in order to protect the rights of parents whose children have for years been adjudicated abused, neglected, and/or dependent." *See In re R.T.W.*, 359 N.C. 544, 614 S.E.2d 489, 492 (recognizing that the General Assembly crafted our abuse, neglect, and dependency statutes to mediate the "potential tension between parental rights and child welfare").

¶ 56 The trial court's unchallenged findings and conclusions are based upon clear cogent and convincing evidence. Mother has shown no abuse of discretion in the trial court's failure to grant a continuance, further extensions, to release appointed counsel, or in its best interest determinations to terminate Mother's parental rights. Presuming, without agreeing, this appeal is even properly before this Court, the trial court's order is properly affirmed. I respectfully dissent.